**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| Brand Energy & Infrastructure Services, | : | No:  5:16-cv-02499 |
| Inc. and Brand Energy | : | |
| Services, LLC, | : | Judge Lawrence F. Stengel |
| | : | |
| Plaintiffs, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | ELECTRONICALLY FILED |
| Irex Corporation, Vertical Access Solutions, | : | |
| LLC, Prime Industrial Access, LLC, Robert | : | |
| Russo, Albert Rowe, Christopher Altmeyer, | : | |
| John Kwiatkoski, Terry Shriver, Stephen | : | |
| Pilon, Joseph D'Ulisse, David Crow, Leslie | : | |
| Johnson, Cathy Walls, Jeffrey Maupin and | : | |
| Denver Keene | : | |
| | : | |
| Defendants. | : | |

---

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
ORDER**

---

Bridget E. Montgomery, Esquire (PA 56105)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
and
Mark P. Goodman, Esquire
DEBEVOISE & PLIMPTON, LLP

Attorneys for Plaintiffs

{L0638927.2}

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND.........................................................3

        **A.**   Procedural Background.............................................................................3

        **B.**   Factual Background ...................................................................................3

        **C.**   Facts Specific to the TRO Motion ............................................................5

III.    LAW AND ANALYSIS ...........................................................................................10

        **A.**   This Court Should Grant The TRO Motion...........**Error! Bookmark not defined.**

                 1.      It is highly probable that Plaintiffs will succeed on the merits.................11

                 2.      Plaintiffs will suffer irreparable harm if the TRO is denied .....................17

                 3.      Any impact on the TRO Defendants is far outweighed by the harm
                         to Plaintiffs....................................................................................20

                 4.      The public interest would be served by an injunction ..............................20

IV.     CONCLUSION....................................................................................................21

I.      INTRODUCTION

Plaintiffs, Brand Energy & Infrastructure Services, Inc. ("BEIS") and Brand Energy Services, LLC ("Brand"), recently filed a Complaint against fifteen named Defendants.  The Defendants consist of three corporate entities, Irex Corporation ("Irex"), Vertical Access, LLC ("Vertical Access"), Prime Industrial Access, LLC ("PIA") (collectively the "Irex Company Defendants"), and twelve Individual Defendants.

Plaintiffs seek a temporary restraining order and preliminary injunction to prevent the TRO Defendants – former Brand employees and their new employers – from inequitably and unlawfully misappropriating and using Brand's highly confidential and competitively sensitive trade secrets. The Individual TRO Defendants stole Brand's confidential business information and trade secrets while employed with Brand, took those trade secrets to their new employers, the IREX Defendants, and now are using those trade secrets to undermine Brand's customer loyalty, goodwill, and competitive advantage in the marketplace.

Brand and the Irex Company Defendants are competitors in the field of scaffolding and insulation services, among other areas.  The Individual Defendants were employed variously as officers, managers, and employees of Brand.  The Individual Defendants left the employment of Brand over the course of approximately 18 months and subsequently worked for, or on behalf of, one or more Irex Company Defendants.

The Complaint details how Defendants variously acted and conspired together to:  obtain unauthorized access to Plaintiffs' computerized information; transmit Brand protected business information for use on behalf of the Irex Company Defendants; steal Brand computers and/or misappropriate Brand electronically maintained protected business information for their own use and for use on behalf of the Irex Company Defendants; delete computerized Brand protected

business information from their Brand-issued electronic devices; misappropriate Brand field equipment for use by one or more of the Irex Company Defendants; and violate agreements not to compete and/or solicit employees and customers.

Plaintiffs' Motion for Temporary Restraining Order involves one subset of the unlawful conduct uncovered by Plaintiffs, which has been committed and continues to be committed by the Irex Company Defendants and Defendants Albert Rowe, Jeffrey Maupin, and Denver Keene (collectively the "TRO Defendants").

Rowe, Maupin, and Keene currently work for, or on behalf of, one or more of the Irex Company Defendants.  All TRO Defendants engaged in unlawfully stealing, obtaining, and using Brand's trade secrets and other protected business information to obtain contracts and customer projects with the use of this information, as more fully described below.  Presently, one or more of the Irex Company Defendants is illegally competing with Brand to obtain the award of contracts for scaffolding and insulation work valued in the many millions of dollars, at the Arizona Public Service ("APS") Four Corners Power Plant in New Mexico ("the Four Corners Project") which is to be awarded imminently.

Plaintiffs therefore seek a temporary restraining order immediately restraining and enjoining the TRO Defendants from competing for the Four Corners Project contracts, directing them to withdraw their bid, further directing them to return all of Brand's business information, including, but not limited to, all information of any type about the Four Corners Project and bid, enjoining Maupin and Keene from violating any aspect of their respective employment agreements with Brand, enjoining the Irex Company Defendants from soliciting any such breaches, and directing the TRO Defendants to produce for Plaintiffs' examination all electronic devices used by Rowe, Maupin, and Keene, as further described below.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    Procedural Background

On May 20, 2016, Plaintiffs filed the Complaint.  (Dkt. 1.)  Susan K. Lessack, Esquire, of Pepper Hamilton LLP has confirmed she is counsel for eleven of the fifteen Defendants named in this action, specifically:  the TRO Defendants, along with Individual Defendants Christopher Altmeyer, John Kwiatkoski, Terry Shriver, David Crow, and Leslie Johnson, all of whom currently work for or on behalf of one or more Irex Company Defendants.  Attorney Lessack agreed to accept service on behalf of these eleven Defendants, and returned all eleven Waivers of Service on June 2, 2016.

Plaintiffs have confirmed personal service upon Defendants Cathy Walls and Joseph D'Ulisse.  (Dkt. 7 & 8.)  Service upon Robert Russo and Stephen Pilon has not been completed; none of them, however, is a subject of the instant TRO Motion.

In accordance with the Court's procedural requirements, on June 3, 2016, counsel for Plaintiffs requested the concurrence in this TRO Motion by email to Attorney Lessack.  After unsuccessful efforts to negotiate a Stipulated Order to resolve the subject matter of the TRO Motion, Attorney Lessack responded on June 7, 2016, that the TRO Defendants do not concur.

### B.    Factual Background

As extensively detailed in the Complaint (Dkt. 1), this action arises out of an extensive conspiracy between the Individual Defendants and other former Brand employees to steal Brand's trade secrets and confidential business information for the benefit of the Irex Company Defendants, with the ultimate goal of forcing Brand out of business altogether.  Brand initially learned of wrongdoing in February 2013, and immediately placed Defendant Vertical Access on notice, and requested its cooperation in halting the unlawful misappropriation of trade secrets.

Over the following months, Vertical Access and the other Irex Company Defendants, with the assistance of the Individual Defendants, engaged in a far-reaching scheme to steal Brand's information, to conceal the nature and extent of the misappropriation, and to utilize the information to undermine Brand's business activities.   Plaintiffs engaged independent investigators and forensic examiners to conduct field investigations and analysis of electronic devices to determine the extent of the thefts, and the identity of the individuals involved.   Though extraordinarily challenging, complex, and expensive, Plaintiffs gradually uncovered evidence of a wide-ranging course of unlawful conduct that Defendants went to great lengths to conceal, steadfastly denied, and which continues to this day.  (Declaration of Jason Fisher.)[1]

Plaintiffs' discoveries led to filing two civil actions in the Eastern District of Louisiana in which plaintiffs obtained a TRO and preliminary and permanent injunctions against former employee James Stanich, who now works for Irex (No. 2:15-cv-03401), and a second action against Irex (No. 2:15-cv-05712), in which the Court directed the parties to negotiate a protocol for examination of Stanich's Irex computer.  As these cases progressed, Plaintiffs continued with their painstaking investigation, including examination of the computers used by former Brand employees, searching through hundreds of thousands of emails, deleted emails, documents, and fragments from the computers (some of the computers used by the Individual Defendants either were not returned or had massive amounts of data deleted from them in the days before the employees left Brand for the Irex Company Defendants).  (Declaration of Andrew Frisbie.)[2]

Armed with the results of the investigation, Plaintiffs confronted Defendants and demanded that they cease the unlawful conduct.  Defendants denied any wrongdoing, but agreed

---

[1] The Declaration of Jason Fisher is attached as Exhibit P to the TRO Motion.
[2] The Declaration of Andrew Frisbie is attached as Exhibit G to the TRO Motion.

4

to conduct an internal investigation. The "investigation" was a farce designed only to stall Plaintiffs' investigation and any legal action to stop the wrongdoing. In the meantime, while the supposed "investigation" was being undertaken by the Irex Company Defendants, TRO Defendants Maupin and Keene joined an Irex Company in January 2016 in direct violation of their non-competition agreements with Brand.

> ### C. Facts Specific to the TRO Motion

Maupin and Keene are former managerial employees whose territory included the Southwest region within which the APS Four Corners Power Plant is located. Maupin was the Southwest region branch manager, and he worked extensively on Brand's bid for the APS Four Corners Project. Maupin also was bound by a Confidentiality, Non-Competition, and Non-Solicitation Agreement (the "Maupin Agreement"), in addition to his common law fiduciary duties to Brand, and his obligations under the law with respect to protection of his employer's trade secrets. (Maupin Agreement.)[3]

Keene was a project manager for Brand in its Southwest region, who reported to Maupin, and was hired specifically to work on all APS sites, and who also worked extensively on Brand's bid for the APS Four Corners Project. Keene was obligated to Brand under a Confidentiality, Non-Competition, and Non-Solicitation Agreement (the "Keene Agreement"), in addition to his common law fiduciary duties to Brand, and his obligations under the law with respect to protection of his employer's trade secrets. (Keene Agreement.)[4]

The restricted areas of competition for Maupin and Keene under their respective agreements include any locality within the United States where Brand attempted to sell or did sell,

---

[3] The Maupin Agreement is attached as Exhibit N to the TRO Motion.
[4] The Keene Agreement is attached as Exhibit O to the TRO Motion.

rent, or provide its products or services, that were within their management, operation, or sales responsibility, or within the responsibility of personnel directly reporting to them within the last year of their employment with Brand.  (Maupin Agreement ¶ 3; Keene Agreement ¶ 3.)  New Mexico is within the restricted geographical territory covered by the Maupin and Keene Agreements with Brand.  (Fisher Declaration, ¶ 4; Mallory Declaration, ¶ 7.)[5]

The Maupin and Keene Agreements provided that Maupin and Keene, for one year after their involuntary termination with Brand, shall not, directly or indirectly, on their own behalf or on behalf of any other party:

> 1.      recruit, solicit, hire, or attempt to recruit, solicit or hire any person who is employed by the Company or was employed by the Company at any time during the last one (1) year of Manager's employment with the Company, nor induce or attempt to induce any such employee to leave the employment of the Company.   Manager further acknowledges that such other employees of the Company may be similarly bound by agreements with the Company and that Manager shall not induce or attempt to induce, either directly or indirectly, a breach of the duties owed by such other employees to the Company.

> 2.      sell, rent, provide or attempt to sell, rent or provide any products or services in competition with or similar to those products or services which the Company sold, rented or provided or attempted to sell, rent or provide, during Manager's employment at the Company, to:  (I) any person, company or other entity to whom Manager, or any employee reporting to Manager, sold, rented, provided or attempted to sell, rent or provide such Company products or services at any time during the last one (1) year of Manager's employment with the Company, or (II) any person, company or other entity about whom Manager received Confidential Information while employed by the Company, or (III) any person, company or other entity with whom Manager had material contact during the last one (1) year of Manager's employment with the Company.

> 3.      divert away from the Company current, former or potential customers of the Company to whom Manager, or any

---

[5] The Declaration of William Mallory is attached as Exhibit Q to the TRO Motion.

employee reporting directly to Manager sold, rented, provided or attempted to sell, rent or provide the Company's products or services at any time during the last one (1) year of Manager's employment at the Company, or about whom Manager received Confidential Information while employed by the Company, or with whom Manager had material contact during the last one (1) year of Manager's employment at the Company, nor seek to induce or encourage such customers to modify or not renew their business relationship with the Company.

(Maupin Agreement ¶ 4; Keene Agreement ¶ 4.)

In addition, Maupin and Keene each were bound by strict confidentiality and non-disclosure obligations with respect to all of Brand's confidential information, which includes pricing information and a wide variety of other business information not generally available to the public. (Maupin Agreement ¶¶ 1(a)-(g); Keene Agreement ¶¶ 1(a)-(g).)

While remaining in their Brand positions and holding themselves out as loyal Brand employees, Maupin and Keene prepared budgeting bids and, later, actual bids for two contracts for work at the Four Corners Project – one for scaffolding work and the other for the insulation work. The Brand bids for the Four Corners Project are complex, and required a significant amount of time, so much so that Maupin and Keene, with the assistance of other Brand managers, each spent a significant portion of 2015 developing the bids. (Mallory Declaration, ¶ 11.) The Brand bids contain Brand's non-public information for the Four Corners Project, which includes details of pricing and equipment needs for the two areas of work for the project. (*Id.* at ¶ 9.)

Maupin and Keene secretly accepted offers of employment with Defendant Vertical Access or PIA, while continuing employment with Brand, holding themselves out as loyal employees of Brand, and working on the Four Corners Project bid through their departures on December 30, 2015, and December 22, 2015, respectively. (Frisbie Declaration, pp. 6-7; Mallory Declaration,

¶¶ 14-16.)  Maupin and Keene began working for one or more of the Irex Company Defendants by at least early January, 2016, when PIA was an Irex start-up.  (Mallory Declaration, ¶¶ 16-17.)

After learning of their employment with an Irex company, Brand sent letters to Maupin and Keene, copied to Irex and its counsel, demanding that they refrain from and cease all conduct in violation of their Agreements and of Brand's rights.  (Letters dated February 29, 2016.)[6]  As has occurred each time Brand has brought suspected unlawful conduct to the attention of the Irex Company Defendants, they denied any and all wrongdoing on their part or on the part of Maupin and Keene, and demanded that Brand provide them with information rather than conducting a meaningful investigation on their own.  (Letter dated March 7, 2016.)[7]

Plaintiffs expanded their own forensic investigations to Maupin and Keene's computers, to their activities, and to the Four Corners Project, all of which, had the Irex Company Defendants undertaken a genuine investigation, the could have discovered themselves far more easily.

The Frisbie Declaration sets out the forensic and testimonial evidentiary support for Plaintiffs' claims regarding the unlawful conduct of the TRO Defendants in connection with their plan to obtain the scaffolding and insulation contract awards for the Four Corners Project for one or more of the Irex Company Defendants, using information from bids Maupin and Keene prepared on behalf of Brand while employed at Brand.

As the Frisbie Declaration, along with the Mallory Declaration and the Fisher Declaration establish, Brand learned and now has proof showing that:

- In the week or so prior to his last day of work for Brand, Keene copied a significant amount of Brand confidential information from his Brand-issued laptop computer (Frisbie Declaration, Exhibit G, pp. 13-15.);

---

[6] These letters dated February 29, 2016 are attached as Exhibit K to the TRO Motion.
[7] This letters dated March 7, 2016 are attached as Exhibit L to the TRO Motion.

- Shortly before his departure from Brand, Keene inserted a USB device into his Brand-issued laptop, and one of the files he accessed is named to correlate to the Four Corners Project (Frisbie Declaration, Exhibit G, pp. 13-14.);

- Maupin informed a current Brand employee that, upon his departure, he had an IT expert copy for him the entire contents of his Brand- issued laptop, and caused it to be done in a way that would prevent Brand from ever detecting what he had done (Frisbie Declaration, Exhibit G, p. 7; Mallory Declaration, Exhibit Q, ¶ 15.);

- The bid and the information Maupin and Keene used to develop the Four Corners Project on behalf of Brand were contained on their Brand-issued laptop computers (Frisbie Declaration, Exhibit G, pp. 10-11, including Maupin Exhibits 2 and 3; Mallory Declaration, Exhibit Q, ¶¶ 10, 25; Fisher Declaration, Exhibit P, ¶ 6.);

- Maupin and Keene assisted Brand in submitting a final estimate for scaffolding services for the Four Corners Plant on November 25, 2015, with a specified target price (Frisbie Declaration, Exhibit G, p. 11, including Maupin Exhibit 2, p. 25.);

- Maupin attempted to recruit Mallory, Brand's current Southwest regional manager, to join him and Keene at PIA, which Maupin said was a start-up operation, with a very small budget and little equipment (Mallory Declaration, Exhibit Q, p. 16-17; Frisbie Declaration, Exhibit G, p. 9.);

- Maupin and Keene accessed ticketing websites for the Orange Bowl and Citrus Bowl, and Keene purchased tickets to the Citrus Bowl on their Brand computers (Frisbie Declaration, p. 12, including Maupin Exhibit 4 and Keene Exhibit 5.);

- After leaving Brand, Maupin reported that Keene attended the Citrus Bowl with representatives of AECOM, the design build team for the Four Corners Project, and this occurred several days after Keene ended his employment with Brand (Mallory Declaration, ¶ 20; Frisbie Declaration, p. 12.);

- At the Citrus Bowl game Keene attended with the AECOM representatives, Keene proposed a bid on behalf of Irex Company Defendants just below Brand's bid price (Mallory Declaration, ¶ 21; Frisbie Declaration, p. 12.); and

- Maupin reported to Mallory that, in January, 2016, he and Keene attended a meeting in Princeton, New Jersey with Rowe in connection with the Four Corners Project (Mallory Declaration, ¶ 22; Frisbie Declaration, p. 13.).

Moreover, while denying any wrongdoing with respect to the Four Corners Project and Maupin and Keene, Irex has confirmed that:

- TRO Defendant Rowe learned about the Four Corners Project in about November, 2015;

9

- One or more of the Irex Company Defendants have recently bid the same work that Brand bid at the Four Corners Project;[8]

- Rowe, who served for at least two years as the President of Vertical Access and recently was promoted to a position with Irex Corporation, has been and remains the "public face" with respect to the bids on behalf of the Irex Company Defendants for the Four Corners Project; and

- Rowe attended a Four Corners Project pre-bid meeting in Princeton, New Jersey in January, at the offices of AECOM, and Keene and Maupin joined Rowe in Princeton.  Irex disingenuously insisted that they did not discuss business, but had just gone to a dinner meeting with AECOM representatives and Rowe.

Plaintiffs have engaged in meetings and discussions with Defendants to address the conduct at issue in this TRO Motion, and encourage the Irex Company Defendants' to cease and desist, but to no avail.  Plaintiffs' efforts to learn about the extent of Defendants' unlawful conduct was continuously obstructed by the Defendants' refusal to admit and/or investigate the circumstances.  Consequently, Plaintiffs were forced to continue the difficult and expensive field and forensic investigation to uncover the truth about Defendants' unlawful actions, and now must seek judicial intervention to enjoin the Defendants' unlawful use of Plaintiffs' trade secrets in connection with the imminent award of the Four Corners Project.

## III.   LAW AND ANALYSIS

To obtain a preliminary injunction, the plaintiff must show: (1) the likelihood that the plaintiff will prevail on the merits at a final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer

---

[8] Irex, Vertical Access, and PIA are not significantly separated entities, at least insofar as this Four Corners Project is concerned.  Irex confirmed that Rowe was hired as the President of Vertical Access and appeared on behalf of PIA and/or Vertical Access at a pre-bid meeting held in Princeton, New Jersey in January, 2016.  Irex also confirmed that Rowe now has a managerial position with Irex, but still is the "public face" for PIA and/or Vertical Access in connection with the Four Corners Project.

irreparable harm if the preliminary injunction is issued; and (4) the public interest.  *See, e.g., Kos Pharm. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  Here, all four elements are satisfied.

### A.      It is highly probable that Plaintiffs will succeed on the merits

Plaintiffs raise various claims against the TRO Defendants in the Complaint, including violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* (the "DTSA") (Count I), violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.* (the "CFAA") (Count II), and violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. §§ 5301, *et seq.* (the "PUTSA") (Count III).  (Compl., ¶¶ 258-96.)  Plaintiffs also assert causes of action for breach of contract against Maupin and Keene, respectively (Counts IX and X).  *Id.* at ¶¶ 333-57.  Plaintiffs are likely to succeed on the merits of those claims, as explained below.

### 1.      The TRO Defendants violated the DTSA by misappropriating Plaintiffs' trade secrets which are used to provide service and products to customers throughout the United States and Canada

The DTSA provides a cause of action for an owner of a trade secret that is misappropriated and related to a product or service used in interstate or foreign commerce.  *See* 18 U.S.C. §§ 1836, 1839.  For purposes of the statute, a "trade secret" is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. §1839(3).

"Misappropriation" means the "acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret…." *Id.* §§ 1839(5)(A), (B)(i). "Improper means" includes misrepresentation and breach or inducement of a breach of a duty to maintain secrecy. *Id.* § 1839(6).

Here, Maupin, Keene, and Rowe worked on preparing bids for the Four Corners Project, prior to their departure from Brand. Using Plaintiffs' confidential, protected business information, Keene submitted a bid on behalf of Irex and PIA to a project leader for the Four Corners Project. This information qualifies as a "trade secret" because it is financial, business, and technical information of Plaintiffs from which they derive independent economic value from not being generally known, and Plaintiffs have taken reasonable measures to keep such information secret. *Id.* at § 1839(3); *Mattern & Assocs., LLC v. Latham & Watkins LLP*, 2014 U.S. Dist. LEXIS 136596 (E.D. Pa. Sept. 26, 2014) (collecting cases under PUTSA, concluding that pricing proposals are "trade secrets").[9]

The testimony and forensic evidence at the hearing will establish that the TRO Defendants misappropriated Plaintiffs' trade secrets to bid on the Four Corners Project, and that they continue to misappropriate Plaintiffs' trade secrets to seek a competitive advantage. For these reasons, Plaintiffs will likely succeed on their DTSA claim. *See*, *e.g.*, *Kos Pharm.*, 369 F.3d at 708.

### 2.   The TRO Defendants violated the CFAA, by, among other things, exceeding their authorized access of Plaintiffs'

---

[9] No cases have yet been decided under the DTSA; however, given the similarities between the DTSA and the UTSA, the Courts should conclude that confidential bid and pricing information is a "trade secret" under both the DTSA and the UTSA.

> **computers both during and after their employment, for the purpose of gathering and transferring Brand protected business information for use by, and on behalf of, the Irex Company Defendants**

The CFAA makes unlawful the actions of any person who "knowingly and with intent to defraud accesses a protected computer without authorization, or exceeds authorized access, and by a means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

The statute defines a "protected computer" as "a computer . . . which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that it used in a manner that affects interstate or foreign commerce or communication of the United States." *Id.* § 1030(e)(2)(B). "Exceeds authorized access" means "access[ing] a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Id.* § 1030(e)(6).

In interpreting the statute, this Court has held that an employee can exceed his authorized access to his employer's computer systems where, as here, the employee copies, downloads, or otherwise transfers confidential, proprietary information of the employer from its computer systems, for the purpose of using that information to advance the interests of a competitor. *See HUB Grp., Inc. v. Clancy*, No. 05-2046, 2006 WL 208684, *4 (E.D. Pa. Jan. 25, 2006).

Courts within the Third Circuit have also held the act of inducing another to access a protected computer that he/she is not authorized to use constitutes "access" for the purposes of the CFAA. *See, e.g., Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 327 (M.D. Pa. 2014); *see also Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4205476, at *17 (E.D. Pa.

13

Sept. 19, 2012); *Binary Semantics Ltd. v. Minitab, Inc.*, No. 4:07-CV-1750, 2008 WL 763575, at *5 (M.D. Pa. Mar. 20, 2008).

Here, at the inducement of Rowe and the Irex Company Defendants and while still employed with Brand, Maupin and Keene, with the intent to defraud Plaintiffs, exceeded their authorized access to Brand's computerized information by transferring and providing Plaintiffs' confidential and proprietary information to the Irex Company Defendants.  After they left their positions with Brand, Maupin and Keene, acting in concert with the Irex Company Defendants and Rowe, obtained unauthorized access to Brand's computerized information and computer network in furtherance of their own interests.

The forensic evidence provided in the Frisbie Declaration, which will be further established at the hearing, confirms that the TRO Defendants used the unauthorized access of Plaintiffs' computerized information and network to bid on, and potential be awarded, the Four Corners Project.   The wrongfully obtained information far exceeds $5,000 in any one-year period. Consequently, Plaintiffs will likely prevail on their CFAA claim.  *Kos Pharm.*, 369 F.3d at 708.

**3.     The TRO Defendants violated the PUTSA, by acquiring, disclosing, and/or using Plaintiffs' trade secrets that the TRO Defendants knew had been acquired through improper means**

The PUTSA prohibits the acquisition, disclosure, or use of a trade secret by a person who knows or has reason to know that it was acquired through improper means.  *See* 12 Pa. C.S. § 5302; *see*, *e.g.*, *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 452 (E.D. Pa. 2014).   A "trade secret" is information – such as a "formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process" – that "[d]erives independent economic value … from not being generally known to, and not being readily

ascertainable by proper means by, other persons" and is the "subject of efforts that are reasonable under the circumstances to maintain its secrecy."  12 Pa. C.S. § 5302.

Here, Plaintiffs have expended significant time and expense developing business strategies, financial analysis, details of pricing and equipment needs for particular customers and projects, including the bid and all corresponding information for the Four Corners Project, and took all reasonable measures to safeguard that information.  Not only were Maupin, Keene, and Rowe aware that Plaintiffs' trade secrets and protected business information were confidential, but Maupin and Keene's employment agreements contained express promises that they would keep Plaintiffs' information confidential.

In the face of promises and cautions, and without Plaintiffs' consent, Maupin, Keene, and Rowe provided the Irex Company Defendants with confidential information concerning specific bid information, including pricing and equipment needs for the Four Corners Project.  The confidential and competitively sensitive information that Maupin, Keene, and Rowe misappropriated and passed on to the Irex Company Defendants is precisely the type of information protected by the PUTSA.  *Mattern & Assocs., LLC v. Latham & Watkins LLP*, 2014 U.S. Dist. LEXIS 136596 (E.D. Pa. Sept. 26, 2014) (collecting cases under PUTSA, concluding that pricing proposals are "trade secrets").

As to the Irex Company Defendants, they were plainly aware that the information they were receiving and using for the Four Corners Project from Defendants Maupin, Keene, and Rowe was provided through improper means and without authorization.  The Irex Company Defendants knew that Defendants Maupin, Keene, and Rowe owed Plaintiffs a duty of confidentiality, and that the information used for PIA's Four Corners Project bid was not the kind of information they

would allow to be shared about their own business.  As such, Plaintiffs will likely succeed on their

PUTSA claim.  *See*, *e.g.*, *Kos Pharm.*, 369 F.3d at 708.

> **4.      Maupin and Keene breached their respective employment
> agreements with Brand, by, *inter alia*, disclosing Brand's
> confidential information and trade secrets to the Irex
> Company Defendants**

Arizona, Nevada, and Pennsylvania all have the same essential requirements for a breach

of contract claim.[10]  In each state, a plaintiff must prove: (1) the existence of a contract; (2) a

breach of a duty imposed by the contract; and (3) damages resulting from that breach.  *See*, *e.g.*,

*Best W. Int'l, Inc. v. Patel*, 523 F. Supp. 2d 979, 988 (D. Ariz. 2007); *Saini v. Int'l Game Tech.*,

434 F. Supp. 2d 913, 919-20 (D. Nev. 2006); *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d

378, 413 (E.D. Pa. 2009).

These states also have the same essential requirements for non-competition agreements.  In

each state, a non-compete agreement is valid and enforceable if the restraint is reasonably

necessary to protect the employer's business and reasonable as to time and scope.  *See*, *e.g.*, *Bed*

*Mart, Inc. v. Kelley*, 45 P.3d 1219, 1221 (Ariz. Ct. App. 2002); *Boart Longyear, Inc. v. National*

*EWP, Inc.*, No. 2:11-CV-2106, 2012 WL 1985293, at *3 (D. Nev. 2012); *Omnicron Sys., Inc. v.*

*Weiner*, 860 A.2d 554, 560 (Pa. Super. Ct. 2004).

Here, Maupin and Keene each executed agreements with Brand, in return for valuable and

sufficient consideration.  Under those Agreements, Maupin and Keene each agreed to not disclose

to anyone any trade secret or confidential information relating to any business, product, or service

---

[10] The Maupin Agreement states that it "shall be governed by . . . the laws of the State of Nevada." Maupin Agreement ¶ 14, while the Keene Agreement states that it "shall be governed by . . .  the laws of the State of Arizona."  Keene Agreement ¶ 14.  Thus, Plaintiffs believe that Count IX is subject to Nevada law, while Count X is subject to Arizona law.  However, in the event that the TRO Defendants raise a choice of law issue, Plaintiffs have analyzed Counts IX and X under Pennsylvania law as well.

of Brand, "except as may be required in the course of performance of [his] duties for the Company."  (Maupin Agreement ¶ 1(a); Keene Agreement ¶ 1(a).)

Maupin and Keene also each agreed that, during their employment and for one year thereafter, neither would become employed by a company that directly competes with Brand in any locality within the United States where Brand attempted to or did sell, rent, or provide its products or services, that were within their management, operation, or sales responsibility, or within the responsibility of personnel directly reporting to them, within the last year of their employment with Brand.  (Maupin Agreement ¶ 3; Keene Agreement ¶ 3.)

In violation of those agreements, Maupin and Keene began working for PIA in the same region that they worked for Brand and on the same projects that they worked for Brand just weeks after each departed the company. Maupin's own LinkedIn profile shows him as the Area Branch Manager situated in Las Vegas, Nevada for Brand through December 2015, and currently as the Area Manager for Defendant PIA in Henderson, Nevada. (Frisbie Declaration, Maupin Exhibit 1 thereto).  In further violation of those agreements, Maupin and Keene disclosed Brand's trade secrets and confidential information to the Irex Company Defendants.  And in further violation of those agreements, Maupin and Keene have both attempted to solicit Brand employees to work for the Irex Company Defendants, and both are currently working on behalf of Irex and PIA to obtain the work at the Four Corners Power Plant that each bid on behalf of Brand in the months prior to departing to work for PIA.

Therefore, Plaintiffs will likely prevail on their breach of contract claims.  *See*, *e.g.*, *Kos Pharm.*, 369 F.3d at 708.

**B.     Plaintiffs will suffer irreparable harm if the TRO is denied**

Absent a TRO, Plaintiffs will continue to experience immediate and irreparable injury, loss, and damage.  The TRO Defendants possess Plaintiffs' confidential business information and trade secrets.  In fact, the TRO Defendants are attempting to be awarded the Four Corners Project by using Plaintiffs' confidential business information and trade secrets.  The award of the contracts for the scaffolding and insulation work at the APS Four Corners Power Plant is scheduled to be made in about mid-June, and Plaintiffs TRO Motion is limited to these circumstances.[11]

The evidence attached to the Motion is sufficient to show that, without a TRO, the TRO Defendants will continue to pursue contracts relating to the Four Corners Project, that it is inevitable that they will use Brand's protected business information and trade secrets to do so, and that they will continue to pursue other business opportunities and customer relationships relying on improper knowledge of Plaintiffs' pricing, strategies, financial expectations, and drawings, all of which would give Defendants improper advantages in the marketplace at Plaintiffs' expense and all by reason of their receipt of and access to stolen information.  The files and information that was stolen from the Maupin and Keene computers, as revealed in the Frisbie Declaration, such as bid proposals, contracts with various customers, bids, master rate sheets, materials lists, drawings, market playbook updates, and monthly operating reports, among others, are critical to Brand's competitive position in the market.  If these files are used or disclosed by any competitor, it will cause devastating and incalculable harm to Brand.  (Schultz Decl. ¶ 6)[12]

---

[11] Plaintiffs intend to file a separate preliminary injunction motion regarding other unlawful events, seeking injunctive relief including but not limited to the return of other confidential and protected business information and trade secrets.  Given that the subject matter of this TRO presents a discrete issue for which extremely compelling proof is not available, and with the extraordinary complexity of the overall unlawful conduct and the evidence Plaintiffs have gathered and the imminence of the award of the Four Corners work, Plaintiffs believe it is critical to keep this TRO Motion separate from the larger case so that it can be dealt with most expeditiously.

[12] The Declaration of Blair Schultz is attached to the Motion as Exhibit B.

It is imperative that the TRO Defendants are stopped from reaping the rewards of stealing Plaintiffs' confidential business information and trade secrets.  Because the loss of Plaintiffs' competitive advantage in the industry cannot be quantified, the continuing harm must be stopped in order for Plaintiffs to be made whole, as near as possible.  *See*, *e.g.*, *Den-Tal-Ez, Inc. v. Siemens Capital Corp.,* 566 A.2d 1214, 1233 (Pa. Super. Ct. 1989) (holding that use of employer's trade secrets and confidential information "is precisely … the type of injury that most warrants injunctive relief"); *see also Ecolaire, Inc. v. Crissman*, 542 F. Supp. 196, 205 (E.D. Pa. 1982) (reciting the well-established principle that an employee's use of his former employer's trade secrets or confidential information constitutes irreparable harm warranting injunctive relief).

Indeed, Congress and the Pennsylvania General Assembly both have legislated that injunctive relief is available to remedy and prevent the actions of wrongdoers such as the TRO Defendants.  The DTSA, CFAA, and PUTSA all specifically authorize a court to award injunctive relief to prevent actual or threatened harm in cases such as this one.  *See* 18 U.S.C. § 1836(b)(3)(A)(i) and (ii) (DTSA authorizes a court to grant an injunction to "prevent any actual or threatened misappropriation" and, in appropriate circumstances, "to requir[e] affirmative actions to be taken to protect the trade secret"); 12 Pa. C.S. § 5303(a), (c) (PUTSA authorizes court to enjoin "actual or threatened misappropriation" and, in appropriate circumstances, to compel "affirmative acts to protect a trade secret"); 18 U.S.C. § 1030 (g) (any person who suffers damage or loss by reason of a violation of the CFAA may obtain injunctive relief or other equitable relief).

Further, a TRO is necessary to stop Defendants, and anyone else working in concert with them, from further misappropriating, using, or disseminating Plaintiffs' confidential proprietary information and trade secrets.  In short, the continuing irreparable harm to Plaintiffs is incalculable and cannot be remedied absent an immediate TRO, followed by a preliminary injunction.

19

**C.    Any impact on the TRO Defendants is far outweighed by the harm to Plaintiffs**

The irreparable harm that Plaintiffs would suffer without injunctive relief far outweighs the limited impact, if any, on Defendants. *See, e.g.*, *Kos Pharm.*, 369 F.3d at 708. Defendants are not harmed by being prohibited from doing what they had and have no right to do. As ex-employees who now work for competitors, Maupin, Keene, and Rowe have no right to the continued possession and use of Plaintiffs' confidential business information and trade secrets. The Irex Company Defendants have no right to Plaintiffs' confidential information and cannot be harmed by an order enjoining its use. *See, e.g.*, *Tuff Wrap Installations, Inc. v. CleanWrap, Inc.*, No. 11-2576, 2011 WL 2622676, at *8 (E.D. Pa. June 29, 2011) (holding that the harm to the plaintiff that would result from allowing the defendants to use and disseminate the plaintiff's confidential information outweighed any harm that may befall the defendants who knew of non-compete agreement).

**D.    The public interest would be served by an injunction**

The public interest would be served by an injunction. The public interest undeniably involves upholding "the inviolability of trade secrets and enforceability of confidentiality agreements." *Bimbo Bakeries USA, Inc. v. Cleanwrap, Inc.*, 613 F.3d 102, 119 (3d Cir. 2010) (citation and quotation marks omitted). In contrast, there is no public interest in condoning the acts of disloyal employees who remained embedded at their former employer's offices for many months while sending proprietary information to their new employer and other competitors for purposes of usurping their former employer's business opportunities. Aside from the irreparable harm caused to Plaintiffs, the TRO Defendants' continuing unlawful conduct will envelop other third parties in business relationships that will be extremely difficult to unwind, thus causing untold

harm to possibly unsuspecting third parties.  It is therefore is in the public interest to halt the TRO Defendants' improper conduct immediately.

## IV.    CONCLUSION

Plaintiffs Brand Energy & Infrastructure Services, Inc. and Brand Energy Services, LLC respectfully request that this Court grant their Motion for Temporary Restraining Order and schedule a hearing within 14 days of the date the Court issues its temporary restraining order.  At such hearing, Plaintiffs request that the Court extends the temporary restraining order until this litigation is resolved.

Plaintiffs will also shortly submit a Motion for Preliminary Injunction against the Irex Company Defendants and all other Individual Defendants.  While Plaintiffs believe they could prove that a temporary restraining order is appropriate as to all Defendants and all counts, for simplicity and ease of the expedited hearing, Plaintiffs will address the remaining Defendants and claims at a later time.

Respectfully submitted,

*/s/ Bridget E. Montgomery*

Bridget E. Montgomery, Esquire (PA 56105)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
213 Market Street, 8th Floor
Harrisburg, PA  17101
Telephone:    717.237.6054
Email: bmontgomery@eckertseamans.com

Mark P. Goodman, Esquire
DEBEVOISE & PLIMPTON, LLP
919 Third Avenue
New York, NY  10022
Telephone:    212.909.6000
Email: mpgoodman@debevoise.com

Date:  June 8, 2016          Attorneys for Plaintiffs

## <u>CERTIFICATE OF CONCURRENCE</u>

Counsel for Plaintiffs have requested concurrence of all counsel in the foregoing Motion

and certify that counsel for Defendants have not concurred as of this writing.

/s/ Bridget E. Montgomery
Bridget E. Montgomery, Esquire
Counsel for Plaintiffs

{L0638927.2}

## CERTIFICATE OF SERVICE

I hereby certify that, on June 8, 2016, I electronically filed the foregoing document using the CM/ECF system, and that I served the same by electronic filing via ECF, pursuant to the administrative procedures of the United States District Court for the Eastern District of Pennsylvania governing the filing and service by electronic means, upon the following:

Susan K. Lessack, Esquire
Pepper Hamilton LLP
400 Berwyn Park
899 Cassatt Road
Berwyn, PA  19312-1183

*Attorneys for Irex Corporation, Vertical Access Solutions, LLC,*
*Prime Industrial Access, LLC, Albert Rowe, Christopher Altmeyer,*
*John Kwiatkoski, Terry Shriver, David Crow, Leslie Johnson,*
*Jeffrey Maupin and Denver Keene*

/s/ Bridget E. Montgomery
Bridget E. Montgomery, Esquire
Counsel for Plaintiffs