**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRAND ENERGY &** | : | |
| **INFRASTRUCTURE SERVICES,** | : | |
| **INC., et al.,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 16-2499** |
| | : | |
| **IREX CONTRACTING GROUP, et** | : | |
| **al.,** | : | |
| | : | |
| **Defendants.** | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                    **October 31, 2016**

Plaintiffs, Brand Energy and Infrastructure Services, Inc., Brand Energy Services, LLC, and Brand Services, LLC ("Brand") filed this action on May 20, 2016, alleging the defendants, Irex Corporation, Vertical Access, LLC, Prime Industrial Access, LLC, and various individuals ("Irex") misappropriated, stole, and improperly used Brand's proprietary business information in violation of state and federal law. On June 8, 2016, Brand filed a motion for a temporary restraining order ("TRO"). Presently before me is Brand's motion for reconsideration of my denial of this TRO motion.

Brand and Irex are companies that specialize in a wide array of industrial services. The individual defendants are people who used to work at Brand but now work, or have worked, for Irex. At the time the TRO motion was filed, Brand and Irex were both competing to be awarded the contract to complete a multi-million dollar scaffolding and

insulation project at the APS Four Corners Power Plant in New Mexico. In its TRO motion, Brand represented: "The award of the contracts for the scaffolding and insulation work at the APS Four Corners Power Plant is scheduled to be made in about mid-June, and Plaintiffs' TRO Motion is limited to these circumstances." (Doc. No. 9 ¶ 54). Brand went on to state, "Plaintiffs intend to file a separate preliminary injunction motion in the near future regarding other unlawful events" but that "the subject matter of this TRO presents a discrete issue." (Id. ¶ 54 n.3). According to plaintiffs, the pending Four Corners bid was the "one aspect" of their action that the TRO motion was aimed to address. (Id. ¶¶ 39–41).

One day after the TRO motion was filed, on June 9, 2016, the Honorable Jeffrey L. Schmehl (sitting as Emergency Judge) granted Brand's TRO motion in part. A subsequent hearing was scheduled for June 14, 2016 before me to revisit the status of the TRO. At the June 14, 2016 hearing, Brand and Irex called various witnesses and presented evidence on the subject of the TRO. At the end of this hearing, I scheduled an additional half day hearing for June 28, 2016. At the request of Brand, and because of the time-sensitive nature of the Four Corners bid, I scheduled a telephone status conference with the parties for June 22, 2016. One day before this telephone conference, on June 21, 2016, counsel notified me that the Four Corners bid had been awarded to some unrelated party—neither Brand nor Irex. Consequently, on June 24, 2016, I entered an Order denying Brand's TRO motion as moot and vacating the earlier June 9, 2016 Order which had granted the TRO motion in part. (Doc. No. 33). I specifically found: "Because the bid

has been awarded, the court finds that the request for relief is no longer urgent and the likelihood of irreparable harm is diminished." (Id.)

Presently before me is Brand's motion for reconsideration of this June 24, 2016 Order. Brand argues that I committed "errors of law" that will cause Brand "manifest injustice." (Doc. No. 43-4 at 2). According to Brand, these errors of law were: (1) dissolving the TRO without a motion to dissolve and proper notice or a hearing based upon "TRO Defendants' self-serving, inconsistent assertion that the TRO Motion only related to the bids for the [Four Corners project]"; (2) cancelling the second day of the hearing; and (3) failing to resolve disputes of fact and credibility without allowing Brand to "present oral evidence" on these issues. (Id.)

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). "The scope of a motion for reconsideration . . . is extremely limited." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). A court deciding a motion for reconsideration may alter or amend a judgment "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café, 176 F.3d at 677 (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be

3

granted sparingly. <u>Cont'l Cas. Co. v. Diversified Indus., Inc.</u>, 884 F. Supp. 937, 943 (E.D.
Pa. 1995).

Brand argues that Irex has made the "self-serving" assertion that Brand's "TRO
Motion only related to the bids for the [Four Corners project]." (Doc. No. 43-4 at 2). By
relying on this alleged "self-serving" assertion, according to Brand, I committed errors of
law. Interestingly, though, in Brand's very own TRO motion, Brand explicitly
represented to this court: "The award of the contracts for the scaffolding and insulation
work at the APS Four Corners Power Plant is scheduled to be made in about mid-June,
*and [our] TRO Motion is limited to these circumstances*." (Doc. No. 9 ¶ 54) (emphasis
added). In its accompanying brief, Brand similarly stated:

> Plaintiffs' Motion for Temporary Restraining Order involves one subset of
> the unlawful conduct uncovered by Plaintiffs . . . . Presently, one or more of
> the Irex Company Defendants is illegally competing with Brand to obtain
> the award of contracts for scaffolding and insulation work valued in the
> many millions of dollars, at the Arizona Public Service ("APS") Four
> Corners Power Plant in New Mexico ("the Four Corners Project") which is
> to be awarded imminently."

(Doc. No. 9-20 at 4). Nearly all of the points addressed in Brand's TRO motion related
exclusively to the Four Corners bid. Thus, contrary to its argument, it was Brand—not
Irex—who first made the unequivocal assertion that the TRO motion related only to the
Four Corners bid.

Brand's peculiar argument is perhaps the result of the emergency judge initially
granting some of the relief Brand sought that went beyond the Four Corners bid. (Doc.

No. 11).[1] I vacated that previous Order, and now Brand seeks to retroactively rely on the ambiguity of its TRO motion to argue that it really involved more than the Four Corners bid. Viewed side by side, Brand's TRO motion and motion for reconsideration present a logically impossible position: (1) the TRO motion is exclusively "limited" to the "discrete" issue of the Four Corners bid, *but* (2) the TRO motion involved much more than the Four Corners bid. Brand cherry picks certain sentences from its TRO motion in an attempt to show that the motion related to a much broader scope of conduct than just the Four Corners bid. An honest review of Brand's TRO motion, however, shows this is wrong. Specifically, Brand relies on merely five (5) out of the ninety-four (94) paragraphs in its TRO motion, arguing that the motion "read as a whole" goes "far beyond the Four Corners bid." (Doc. No. 43-4 at 8–9).

This is simply not the case. Three of the paragraphs that Brand quotes come from the section of its TRO motion that is self-titled "Factual Background" and not the next section, which is entitled "Facts Relevant to this TRO Motion." (Compare Doc. No. 9 ¶¶ 13–38 with ¶¶ 39–81). The facts contained in this latter section refer exclusively to the Four Corners bid.[2] Simply put, Brand is attempting to recast its TRO motion as something that it is not. The two other paragraphs Brand quotes are mere conclusory statements about trade secrets information, but the TRO motion as a whole clearly relates

---

[1] Despite the TRO motion's proclamation that it only related to the Four Corners bid, (Doc. No. 9 ¶¶ 39–41, 54 n.3), in its prayer for relief, Brand sought a wide array of injunctive relief that was seemingly unrelated to the Four Corners Bid. (Doc. No. 9 at 26–29).

[2] As with nearly all motions, the "factual background" section in Brand's TRO motion provides a general birds-eye-view synopsis of the case as a whole. (Doc. No. 9 ¶¶ 13–38). On the contrary, Brand's "facts relevant to this TRO motion" section focuses solely on those general facts that are relevant to the TRO. (Id. ¶¶ 39–81).

only to the Four Corners bid. Simply stated, Brand's TRO motion, by its own terms, solely addressed the Four Corners bid. Brand now retrospectively tries to expand the scope of this motion. It was Brand—not Irex—that expressly wrote in its TRO motion that the motion was "limited" to the Four Corners bid. It was not an error of law for the court to consider Brand's TRO motion as limited to the Four Corners bid when the TRO motion explicitly stated it was limited to that issue. [3]

Brand's arguments about the cancellation of the second hearing day ignore my finding that the Four Corners bid had been awarded and, thus, Brand could no longer demonstrate irreparable harm. As explained in the June 24, 2016, Order: "Because the bid has been awarded, the court finds that the request for relief is no longer urgent and the likelihood of irreparable harm is diminished." (Doc. No. 33). In order to obtain a TRO, the moving party must make a "clear showing of *immediate* irreparable harm." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992) (emphasis in original). When the Four Corners bid expired, Brand became unable to show immediate irreparable harm.[4] This was reflected in the June 24, 2016 Order. (Doc. No. 33). Brand, like any

---

[3] Brand points out, correctly, that its prayer of relief went far beyond the Four Corners bid. However, this does not change the fact that the TRO motion was expressly limited to the "discrete" issue of the Four Corners bid. Brand cannot rely on the ambiguity of its own TRO motion to argue that I committed "errors of law" in reading it as it was written. To the extent that the emergency judge initially granted some of these broader prayers for relief, I am not bound by that finding, especially since the Four Corners bid expired after that order was entered.

[4] Contrary to Brand's arguments, Brand was aware as early as June 9, 2016, that the TRO entered by the emergency judge could expire as soon as the parties had a hearing before me. (Doc. No. 11 ¶ 8).

litigant, cannot use its motion for reconsideration as "a classic attempt at a 'second bite at the apple.'" <u>Bhatnagar v. Surrendra Overseas Ltd.</u>, 52 F.3d 1220, 1231 (3d Cir. 1995).

Brand next argues I committed an error of law pursuant to Federal Rule of Civil Procedure 65(b)(4). Rule 65(b)(4) addresses the procedure for dissolving TROs that were obtained "without notice." Fed. R. Civ. P. 65(b)(4). Brand attempts to insert language into Rule 65(b)(4), arguing that it should apply equally to TROs entered "with notice." (Doc. No. 43-4 at 17). Because Rule 65(b)(4) is expressly limited to TROs entered "without notice," and the TRO in this case was initially entered with notice, it was not an error of law for me to subsequently vacate the TRO without notice or a hearing.[5]

Brand also relies on case law involving preliminary injunctions, arguing there has been no showing of "changed circumstances" to warrant dissolution of the TRO. <u>E.g.</u>, <u>Favia v. Indiana Univ. of Pa.</u>, 7 F.3d 332, 340 (3d Cir. 1993). However, all of Brand's case law relates to the dissolution of preliminary injunctions—not TROs. Either way, the resolution of the Four Corners bid (with no bid awarded to either Brand or Irex) certainly qualifies as "changed circumstances" given that it was the exclusive centerpiece of Brand's TRO motion. Brand does not dispute that the Four Corners bid was awarded prior to my June 24, 2016 Order. Nonetheless, Brand argues that there were no changed circumstances and that the "other" conduct at issue in this case supports the revival of the TRO. However, this "other" conduct was explicitly excluded from Brand's TRO motion

---

[5] With that said, Brand does not dispute that prior to denying Brand's TRO motion as moot, I held a telephone conference with counsel in which both Brand and Irex agreed the Four Corners bid had been awarded to some other company. (Doc. No. 43 ¶¶ 24–25). During this telephone conference, Brand admits it was provided the opportunity to explain why its TRO motion was not moot. (<u>Id.</u> ¶ 26).

by Brand itself. After representing that their TRO motion was "limited to" the Four

Corners bid, Brand states in a footnote:

> Plaintiffs intend to file a separate preliminary injunction motion in the near
> future regarding other unlawful events, seeking injunctive relief including
> but not limited to the return of other confidential and protected business
> information and trade secrets. Given that the subject matter of this TRO
> presents a discrete issue . . . *Plaintiffs believe it is critical to keep this TRO
> Motion separate from the larger case so that it can be dealt with most
> expeditiously*."

(Doc. No. 9 ¶ 54 n.3) (emphasis added). Therefore, Brand is appending additional

arguments not previously presented to me. See Brambles USA, Inc. v. Blocker, 735 F.

Supp. 1239, 1240 (D. Del. 1990) (emphasizing that reconsideration "should not be used

as a means to argue new facts or issues that inexcusably were not presented to the court

in the matter previously decided"). A motion for reconsideration is not a vehicle through

which the court corrects mistakes made through a party's lack of diligence. W.S. Intern.,

LLC v. M. Simon Zook, Co., No. 11–3014, 2013 WL 638616, at *2 (E.D. Pa. Feb. 20,

2013).

     For these reasons, I will deny Brand's motion for reconsideration.