**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Brand Energy & Infrastructure Services, Inc., Brand Energy Services, LLC, Brand Services, LLC, and Gregg Industrial Insulators, Inc., | : | No: 5:16-CV-02499 |
| | : | Judge Lawrence F. Stengel |
| Plaintiffs, | : | [JURY TRIAL DEMANDED] |
| v. | : | ELECTRONICALLY FILED |
| Irex Corporation, Vertical Access Solutions, LLC, Prime Industrial Access, LLC, Argus Contracting, Inc., Argus Contracting, LLC, Enterprise Industrial Group, LLC, Albert Rowe, John Kwiatkoski, Christopher Altmeyer, Terry Shriver, Jeffrey Maupin, and Denver Keene, | : | |
| Defendants. | : | |

---

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY/CLARIFY PROTECTIVE ORDER

---

Plaintiffs Brand Energy & Infrastructure Services, Inc., Brand Energy Services, LLC, Brand Services, LLC and Gregg Industrial Insulators, Inc. ("Plaintiffs"), by their attorneys, Eckert Seamans Cherin & Mellott, LLC, hereby submit their Memorandum of Law in Support of Motion to Modify/Clarify Protective Order, as follows:

## I. INTRODUCTION AND FACTUAL BACKGROUND

The parties in this case submitted to the Court a stipulated protective order, which was entered by the Court on August 15, 2016 (Doc. 60) (the "Protective Order"). The Protective Order provides two-tier protection for information and documents exchanged between the parties, allowing them to mark "Protected Material" as either "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" ("AEO"). The higher level of protection under the AEO designation was designed to protect the parties from "harm [to] its competitive position if the information becomes known to a party other than the producing party." As such, AEO materials are limited to disclosure to the individuals and entities set forth in subparagraphs (a) through (f) of Paragraph 16 of the Protective Order.

Until recently, it was understood and agreed by the Irex Defendants and their counsel that AEO materials could not be and would not be disclosed to the Individual Irex Defendants – all of whom currently work for the Irex Company Defendants and are directly involved there with sales and marketing efforts. Counsel for Plaintiffs has inquired several times with counsel for the Irex Defendants about this issue, and counsel for the Irex Defendants repeatedly and consistently has stated that AEO materials have not been disclosed to the Individual Irex Defendants.

However, in connection with a recent telephone discussion regarding outstanding discovery obligations and disputes, including the Irex Defendants' Third

Set of Document Requests which includes ninety (90) separate document requests,[1] counsel for the Irex Defendants expressed, for the first time, a belief that they may be entitled to disclose AEO materials to the Individual Irex Defendants. Counsel for the Irex Defendants could not say in the telephone call with certainty that he believed that the Protective Order allowed such disclosure under Paragraph 16(c), and said he would get back to counsel for Plaintiffs about that issue. He agreed, in the interim, to continue the parties' understood practice of not showing the Individual Irex Defendants or any other party to the litigation AEO materials until an AEO designee is appointed and agreed-upon.

In a subsequent letter, dated March 6, 2017, however, counsel for the Irex Defendants took the position that the Irex Individual Defendants were entitled to review AEO materials. Counsel for the Irex Defendants outlined a technical reading of Paragraph 16(c), which states that AEO materials may be disclosed to "the Receiving Party, if the Receiving Party is an individual named as a Party to this litigation," and indicated that they planned to disclose AEO materials to the Irex Individual Defendants, if a motion to modify the Protective Order was not filed by

[1] The Irex Defendants served their Third Set of Requests for Production of Documents on January 27, 2017. This set included ninety (90) document requests.

the close of business on March 13, 2017. Counsel for the Irex Defendants later changed his "deadline" to the close of business on March 14, 2016.[2]

Plaintiffs offered a modest redaction provision in order to resolve the dispute, address any concerns voiced by counsel for Defendants, and avoid motion practice. Counsel for the Irex Defendants rejected the compromise and offered no alternative. Accordingly, Plaintiffs have submitted a Motion to Modify the Protective Order this day and submit this Memorandum of Law in support of it.

Under Paragraphs 18 and 22 of the Protective Order, Plaintiffs seek to modify the Protective Order to clarify that AEO materials may not be disclosed to the Irex Individual Defendants or any other Irex employee designee objected to by Plaintiffs and not approved by the Court, pursuant to Paragraph 16(d). Plaintiffs believe that such a modification/clarification is needed in order to prevent Plaintiffs from suffering the exact type of competitive harm that the Protective Order is designed to prevent.

When read in light of its intended meaning and consistent with all of its provisions – including, importantly, subparagraph (d) relating to employee designees – it is clear that the Protective Order should not be read in a manner that

[2] Due to the snow storm and office closures on March 14, 2016, Plaintiffs informed counsel for Defendants that the impending Motion would be filed the morning of March 15, 2017 and that Plaintiffs expected Defendants to continue to refrain from disclosing AEO materials to the Irex Individual Defendants until this dispute was resolved by the Court.

allows the gutting of any meaningful AEO protection for Plaintiffs. To the extent that cannot be accommodated under the existing language of the Protective Order, it should be amended or modified to afford Plaintiffs the "additional protection" that they may seek under Paragraph 18. In the absence of the remedy requested by Plaintiffs, the Protective Order's AEO designation will become an unfair one-way street protecting only Defendants and will subject Plaintiffs to the risk of unnecessary competitive harm that Plaintiffs never intended to assume.

## II. ARGUMENT

### A. The Disclosure of AEO Materials to the Irex Individual Defendants Will Defeat the Purpose and Intent of the Protective Order to Prevent Competitive Harm to Plaintiffs.

The Irex Defendants point to the language of Paragraph 16(c) as the basis of their contention that AEO materials may now – nearly seven (7) months after the entry of the Protective Order – be disclosed to the Irex Individual Defendants. This position is erroneous and disingenuous for several reasons.

First, the Irex Defendants wholly ignore the fact that the language of subparagraph (c) was not proposed by the Irex Defendants or Plaintiffs, but instead was added by counsel for then-Individual Defendant Robert Russo. At the time, Plaintiffs agreed to this exception to AEO restrictions because counsel for Russo asserted that then-Individual Defendants Joseph D'Ulisse and Russo were differently positioned from the Irex Individual Defendants and needed to see all

documents – a reasonable view, from Plaintiffs' perspective, given that they were separately represented and neither jointly represented with nor currently employed by or affiliated with any of the Irex Company Defendants. Moreover, the risk of competitive harm to Plaintiffs by disclosure of highly sensitive business information to D'Ulisse and Russo would not be the same as disclosure to the Irex Individual Defendants, and, in any event, if during discovery it appeared an unacceptable risk did exist, then the Protective Order allowed for an amendment to address it. However, it was never the intent of the parties (and certainly not Plaintiffs) to have subparagraph (c) utilized to allow the disclosure of AEO materials to the remaining named Irex Individual Defendants – who are still employed by the Irex Company Defendants and have direct involvement with sales and marketing efforts at the Irex Company Defendants. Such disclosures would defeat the entire purpose of the AEO designation – which is to protect Plaintiffs from the potential competitive harm that would occur if such key Irex employees were to review Plaintiffs' sensitive business information.

Second, such a non-sensical and hyper-technical reading of the Protective Order flies in the face of the Irex Defendant's own steadfast recognition of the importance of having an AEO designation in order to prevent key employees of the parties from reviewing the competitively sensitive information being exchanged. Indeed, at one point in the negotiation, the declared position of the Irex Defendants

was that "we interpret Attorneys' Eyes Only literally" and that the inclusion of an employee designee provision (subject to objection and court approval) should not be included in the Protective Order.

Subsequent to the entry of the Protective Order (which was finally negotiated to permit the designation of "one" employee designee to review AEO materials), the Irex Defendants' apparent sensitivity to any notion of AEO materials being shared with key employees in competitive roles was further underscored by the Irex Defendants' objection to Plaintiffs' designation of Rich Ogle as its one designee under subparagraph (d) to review AEO materials. The Irex Defendants' objection was based upon their belief that "Mr. Ogle directly competes for business with Irex in the Ohio Valley market." According to Defendants, "allowing Mr. Ogle to review, among other things, Irex's most sensitive business information, such as pricing and proposals for new and existing customers would place Irex at a competitive disadvantage." Thus, clearly, the Irex Defendants understand the need and purpose for the AEO protections.

Unfortunately, however, the Irex Defendants appear to believe that such competitive protections should apply only to them and not Plaintiffs. Plaintiffs – just as the Irex Defendants – are in the same need of protection from competitive harm (whether intentional or otherwise) that may be caused by the disclosure of sensitive business documents to the Irex Company Defendants' employees directly

involved in sales and marketing activities.[3] In fact, Plaintiffs' need is arguably more acute than the Irex Defendants' need in light of the now-substantiated allegations against the Irex Company Defendants and Irex Individual Defendants relating to the theft, disclosure and use of Plaintiffs' trade secrets and other confidential information. Indeed, discovery has revealed the existence of more than 2,000 Brand-sourced business documents on a single Irex server, many of which documents were modified to appear to be Irex documents and which contain pricing and other business information that the Irex Defendants now mark as AEO in their own favor.

Third, despite the Irex Defendants' recent reversal, the Irex Defendants' acknowledged conduct in refraining from disclosing to the Irex Individual Defendants any AEO materials speaks volumes as to the parties' true intent with respect to the Protective Order's AEO protections. Stated simply, the Irex Defendants know full well that the Protective Order does not permit (and was not intended to permit) unfettered access to Irex key employees to Plaintiffs' sensitive business information. If the Irex Defendants' agreement and understanding were otherwise, they would have disclosed AEO materials to the Irex Individual Defendants long ago. They did not. Instead, the parties both conducted themselves in a manner that demonstrated that they understood that a single employee designee

[3] As alleged in the Amended Complaint, the Irex Individual Defendants include key Irex Defendants' employees engaged in direct sales and marketing activities in competition with Plaintiffs. (See Amended Complaint ¶¶ 5-17.)

had to be agreed upon or approved prior to such disclosures. In fact, the parties have spent the last several months discussing whom those designees might be.

The Irex Defendants' actions (in restricting, to date, access to AEO materials) also speak to the fact that the Irex Individual Defendants – who are being defended jointly by the same counsel as the Irex Company Defendants – have no important need to personally review AEO documents in order to defend themselves. That right is more than protected than by the Protective Order's provision for the review of AEO materials by Irex's lawyers, experts and consultants, and approved employee designee. Again, if it were otherwise, counsel would have provided the Irex Individual Defendants with access to the produced AEO materials long ago.[4]

[4] In their March 6, 2017 letter to Plaintiffs, Defendants generically assert a right of the Individual Irex Defendants to review AEO materials based upon a reference to criminal law principles of a "right to confront accusers" and in "American Jurisprudence." Defendants cite no authority whatsoever to support these assertions, and thus Plaintiffs are uncertain as to what "right" Defendants believe is applicable in this civil litigation context. Nonetheless, it is clear that the Individual Irex Defendants will be more than able to defend themselves through their joint company lawyers, experts, consultants, and approved employee designee. Thus, Defendants' asserted position is meritless.

**B. The Irex Defendants' Interpretation of the Protective Order Creates an Irreconcilable Conflict Between the Language of Subparagraph (c) and Subparagraph (d) – the Latter of Which Explicitly Allows the Designation of Only "One" Employee in a Non-Competitive Role at the Irex Defendants to Review AEO Materials.**

The Irex Defendants' reliance on subparagraph (c) of the Protective Order completely ignores the presence and purpose of subparagraph (d), which clearly sets forth a process for designating only "one" designee from the Irex Defendants for the purpose of reviewing AEO materials. This provision was the subject of months of negotiation, with the Irex Defendants' counsel taking the strongest position against any non-attorney involvement with AEO documents, while, in contrast, subparagraph (c) was not once discussed verbally or in writing between the Irex Defendants and Plaintiffs. Under the Irex Defendants' interpretation, there is either no need for subparagraph (d) (from the Irex Defendants' standpoint), or the Protective Order illogically and unfairly grants the Irex Defendants the ability to have up to seven (7) individuals reviewing Plaintiffs' protected business information, six (6) of them directly involved with the most competitive aspects of Irex business, while allowing Plaintiffs only a single AEO designee who cannot be involved with any competitive aspects of Plaintiffs' business A reasonable interpretation should never make any language superfluous, nor should it result in an enormous advantage to one party and a complete disadvantage to the other. Thus, the Protective Order should not be interpreted in this manner.

Plaintiffs agreed to allow "one" AEO employee designee – not multiple employees competitively involved in the Irex business - to review AEO materials. As the Irex Defendants did with Mr. Ogle, Plaintiffs have a right to object to any proposed designee that is in competitive role or too closely positioned to the sales, marketing, pricing, and other competitive aspects of the business such that AEO materials – intentionally or otherwise – may be subject to use in current business efforts. At bottom, the Irex Defendants' interpretation strips Plaintiffs of their right to make any meaningful objection to the Irex Defendants' AEO designee, and thus, causes an irreconcilable conflict in the language of the Protective Order, not to mention its very purpose.

The more sensible and reasonable reading of the Protective Order is that: (1) the Individual Irex Defendants were not intended to receive unfettered access to AEO materials; (2) subparagraph (c) was limited to the Individual Defendants not employed by the Irex Company Defendants and no longer involved in this case (*i.e.*, Russo, D'Ulisse, and former Individual Defendant Cathy Walls); and (3) Plaintiffs – like the Irex Defendants - should have the meaningful ability to object and seek Court review of any employee designee of the Irex Defendants who is being

proposed as having access to any AEO materials. Only in this way is the true and intention and purpose of the Protective Order accomplished.[5]

### C. To the Extent it is Necessary, the Protective Order Should be Amended or Modified to Ensure That There is Equal AEO Protection Provided to Both Competitors in this Case.

Even if the inartfully-drafted Protective Order does not strictly support Plaintiffs' position (which we believe it does when read fairly), then the Protective Order should be amended or modified in order to make sure that the Plaintiffs in this case receive the same AEO protections as its competitors. It is neither fair nor supportable in law or logic to make the AEO protections a one-way street in favor of the Irex Defendants in this case. The stipulated Protective Order was the product of a consensual process, and Plaintiffs did not intend to agree to any framework that would allow it to be unfairly subject to the risk of competitive harm.

As the Protective Order recognizes in Paragraphs 18 and 22, Plaintiffs are free to seek the modification of the Protective Order and, upon appropriate showing, "such additional protection with respect to the confidentiality of documents or other materials as that party may consider appropriate." Of course, any "showing" as to the need for AEO protection has already been established by the parties' negotiations

[5] It is also noteworthy that Defendants' interpretation creates a conflict with the language of the Protocol Order (Doc. 89), which in Paragraph 9 does not permit any parties or individual defendants (beyond an approved employee designee) to receive and review AEO materials.

and entering into the AEO protections in the first place. As mentioned above, the Irex Defendants fully understand and recognize the need to protect competitive information from being disclosed to the respective competitors in this case. This need is not disputed.

And this is also what makes the Irex Defendants' position and unwillingness to negotiate a fair modification/clarification particularly regrettable. The Irex Defendants are simply – in a disingenuous fashion – seeking to exploit the technical language of subparagraph (c) in a manner completed divorced from the reality of the intent and context of the entire Protective Order. The remedy for this – at a minimum – is simply to modify or amend the Protective Order to allow for the protection of the AEO restrictions to apply equally to both competitors.

In addition, it should be noted that the need for this protection for Plaintiffs has steadily increased in light of the Irex Defendants' discovery demands, including but not limited to their most recent (and belated) ninety (90) document requests, which – in an extremely overbroad manner – seek the production of an enormous amount of Plaintiff's highly sensitive, internal pricing, cost and business information. This information is irrelevant to any of the Irex Defendants' defenses in this case, but in the event Plaintiffs are forced to produce it, it certainly cannot be disclosed to the Irex Defendants' key competitive employees.

Plaintiffs' proposal to maintain its intended AEO protection is simply to delete subparagraph (c) of Paragraph 16. A modified Protective Order is attached to Plaintiffs' Motion.

## III. CONCLUSION

Based on all of the foregoing reasons and consistent with Paragraph 18 of the existing Protective Order, Plaintiffs respectfully request that the Court grant its Motion to Modify/Clarify Protective Order and enter a modified Protective Order in the form attached to Plaintiffs' Motion.

Respectfully submitted,

*/s/Casey A. Coyle*

Bridget E. Montgomery, Esquire (PA 56105)
Casey A. Coyle, Esquire (PA 307712)

ECKERT SEAMANS CHERIN &
MELLOTT, LLC
213 Market Street, 8th Floor
Harrisburg, PA 17101
Telephone: 717-237-6000
Facsimile: 717-237-6019
Email: bmontgomery@eckertseamans.com
ccoyle@eckertseamans.com

David A. Laigaie, Esquire
Mark Levy, Esquire

ECKERT SEAMANS CHERIN &
MELLOTT, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Telephone: 215-851-8400
Facsimile: 215-851-8383
Email: dlaigaie@eckertseamans.com
mlevy@eckertseamans.com

Date: March 15, 2017

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that on this 15th day of March, 2017, I delivered a copy of the foregoing Memorandum of Law in Support of Motion to Modify/Clarify Protective Order upon the person(s) indicated below, via ECF, which service satisfies the requirements of the Federal Rules of Civil Procedure.

Michael S. Hino, Esquire
Susan K. Lessack, Esquire
Sean P. McDevitt, Esquire
Alexander L. Harris, Esquire
Katherine B. Puccio, Esquire
Pepper Hamilton LLP
400 Berwyn Park
899 Cassatt Road
Berwyn, PA 19312-1183
lessacks@pepperlaw.com
hinom@pepperlaw.com
mcdevitts@pepperlaw.com
harrisa@pepperlaw.com
pucciok@pepperlaw.com

Counsel for Irex Defendants

/s/Casey A. Coyle
Casey A. Coyle, Esquire
Counsel for Plaintiffs