IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRAND ENERGY & INFRASTRUCTURE SERVICES, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| IREX CORPORATION, et al. | : | NO. 16-2499 |

**REPORT AND RECOMMENDATION ON**
**PLAINTIFFS' MOTION TO MODIFY/CLARIFY PROTECIVE ORDER**

I.  INTRODUCTION

Plaintiffs in this trade secret case are Brand Energy & Infrastructure Services, Inc., Brand Energy Services, LLC, Brand Services, LLC, and Gregg Industrial Insulators, Inc. (collectively "Brand"). The remaining entity and individual defendants, all represented by the same counsel, are Irex Corporation, Vertical Access Solutions, LLC, Prime Industrial Access, LLC, Argus Contracting, Inc., Argus Contracting, LLC, Enterprise Industrial Group, LLC (all entities collectively "Irex"), Albert Rowe, Christopher Altmeyer, John Kwiatkoski, Terry Shriver, Jeffrey Maupin, and Denver Keene (all defendants collectively "Irex Defendants"). As pled in the lengthy amended complaint, Brand provides scaffolding and related services for various industrial applications in certain geographic markets. Doc. 61 ¶¶ 1-2. Brand alleges that the individual defendants used to work for Brand but left to work for Irex-related entities, and that the defendants violated Brand's trademarks, stole its proprietary information from its computers, stole equipment, and violated restrictive covenants and duties of loyalty, all for the purpose of unlawfully competing with Brand and taking its customers and business. Id. ¶¶ 25-32.

In connection with discovery, and following extensive negotiation, the parties presented a Protective Order to the Honorable Lawrence F. Stengel, which Judge Stengel adopted on August

15, 2016. Doc. 60. Brand has filed a motion to modify/clarify the Protective Order (Doc. 111), together with a brief in support (Doc. 110). The Irex Defendants opposed the motion. Doc. 118. Judge Stengel referred the motion to me to prepare a Report and Recommendation. Doc. 119 ¶ 1(i). Following the referral, Brand sought leave to file a reply in support, and attached its proposed reply brief and supporting exhibits, to which the Irex Defendants filed a response urging the court to deny Brand leave to submit a reply. Docs. 123, 124. In light of Judge Stengel's referral of the underlying motion to modify, I will also address the related motion for leave to file a reply, as well as Brand's letter request for oral argument (Doc. 127).[1]

II. DISCUSSION

A. Applicable Standards

Initially, the Protective Order negotiated by the parties and entered by Judge Stengel contemplates that it may be modified, although it does not set forth procedures or standards for modification. The Protective Order states that a party is not precluded from "applying for an Order modifying this Protective Order in any respect." Doc. 60 ¶ 18. It also states that "[t]his Protective Order may be modified, and any matter related to it may be resolved by written stipulation of the parties or by further order of the Court." Id. ¶ 22. Therefore, the Protective Order itself does not present a barrier to Brand's motion.

Brand neglected to cite to any law or burden in its motion, arguing solely that the order should be modified based on the parties' actual intent and the internal inconsistency that would result from a contrary reading. Doc. 110 at 5-12. The Irex Defendants correctly argue that the motion is governed by the standards applicable to motions for protective orders under Pansy v.

---

[1]Citations to the briefs and pleadings are to the document and page numbers in the court's ECF system.

Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994). Doc. 118 at 6-7.[2] In Pansy, the Third Circuit held that "a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection." Id. at 786 (citing Fed. R. C. P. 26(c); Smith v. BIC Corp., 869 F.2d 194, 199 (3d Cir. 1989)). In considering whether good cause is met, courts must balance the following factors:

> (1) the interest in privacy of the party seeking protection;
> (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

Arnold v. Pa. Dept. of Transp., 477 F.3d 105, 108 (3d Cir. 2007) (citing Pansy, 23 F.3d at 787-88).

In deciding whether to modify a previously entered protective order, the court should apply the same balancing test with the additional factor of the parties' reliance on the existing order. Pansy, 23 F.3d at 790. Reliance "should be only one factor," and "[t]he extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery." Id. The court's language suggests that the initial burden is on the party seeking the modification, but then the determination of good cause is based on the balancing test. "The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still

---

[2]Although I determine that Brand's motion for leave to file is moot, I note that in its proposed reply brief, Brand agrees that Pansy states the relevant law. Doc. 123-2 at 18.

3

exists." Id. The court did not define the level or type of "reason" the moving party must show. In view of the fact that Brand is seeking by its motion to restrict access to certain discovery, it follows that Brand should bear the burden of establishing good cause for its request.

B. The Protective Order and the Parties' Dispute

I begin by summarizing the Protective Order itself, which recites that there is good cause for entry of the Order and acknowledges the parties' mutual need in light of their competitive positions vis-à-vis each other. Doc. 60 at 2 and ¶¶ 2 ("Plaintiffs and Defendants acknowledge that certain documents, equipment, data, electronically stored information, . . . and other materials may contain personal information, and confidential, proprietary and/or trade secret information ("Protected Material) . . . ."), 3 ("Protected Material may have varying degrees of sensitivity with respect to its confidential, proprietary and/or trade secret nature."). The Protective Order allows each party to designate information it provides in discovery as either "Confidential" or "Attorneys' Eyes Only" ("AEO") based on the information's level of commercial sensitivity. A party producing discovery may designate material as confidential if the party and its counsel in good faith believe the material to be "non-public, and constitutes a 'trade secret or other confidential research, development, or commercial information' within the meaning of Fed. R. Civ. P. 26(c)." Id. ¶ 4. A producing party may designate confidential material as AEO if it "in good faith, states a justifiable basis for limiting disclosure" to the receiving party. Id. ¶ 5. If a party believes that discovery material it receives is not deserving of the other party's confidential or AEO designation, the party may challenge the designation, in which case the parties shall in good faith attempt to resolve the dispute and if not successful may seek relief by motion to the court where the burden will be on the party claiming the designation. Id. ¶ 10.

4

The Order limits who may view confidential and AEO material. Confidential material may be disclosed only to "(a) the Court and its officers; (b) counsel . . . (and the employees of such counsel); (c) the parties to this action and no more than five employees . . . who the Receiving Party will designate . . . ; (d) experts and consultants . . . ; (e) . . . auxiliary services . . . routinely engaged by counsel; and (f) witnesses to be deposed or to appear at any hearing or trial." Doc. 60 ¶ 15. Review of AEO material is restricted to "(a) the Court and its officers; (b) counsel . . . (and the employees of such counsel); (c) the Receiving Party, if the Receiving Party is an individual named as a Party to this litigation; (d) one employee of the Receiving Party, who the receiving party will designate . . . ; (e) experts and consultants . . . ; and; (f) . . . auxiliary services . . . routinely engaged by counsel." Id. ¶ 16. With respect to the employees designated to view either confidential or AEO material, the Order allows the producing party to challenge the receiving party's designation of employee(s), to be resolved by motion. Id. ¶¶ 15(c), 16(d). The Order also contains provisions for employees and experts/consultants to be bound by the terms of the Protective Order. Id. ¶¶ 15(c)-(d), 16(d)-(e).

The motion to modify concerns paragraph 16(c), which allows AEO-designated information to be viewed by "the Receiving Party, if the Receiving party is an individual named as a Party to this litigation." According to Brand, this language does not include the remaining named defendants, all of whom are represented by the same counsel as Irex and are alleged to hold managerial positions within Irex which could thus receive competitive advantage by receipt of such information. Brand's motion essentially asks the court either to construe the provision not to refer to the individual defendants who remain in the case, or to delete the provision from the Protective Order. Brand relies on the history of the parties' negotiation of the Protective Order as well as the Order as a whole, and in particular argues that paragraph 16(d) allowing one

5

designated employee to view AEO material would be rendered superfluous if the named defendants could also view it. Irex and the individual defendants argue that the clear language of the disputed provision was the result of careful negotiations, that they have relied on the order as drafted, and that any other construction would deprive the individual defendants of the ability to defend themselves in this action.[3]

### C. Balancing the Pansy Factors

Application of the Pansy factors in the context of a requested modification, as discussed above, requires the moving party to establish the "reason" for change. In the context of the request at issue, the question to be determined is whether Brand has shown good cause for preventing disclosure of its AEO-designated materials to the individual defendants.

The very designation "attorney eyes only" suggests that the parties were identifying a class of information that should not be shared with individuals involved in the parties' business, due to the fact that they are direct competitors. This provision runs in both directions, in that both plaintiffs and defendants may designate material they produce to the other side as AEO, consistent with their positions as competitors. Also, the remaining individual defendants are all identified in the complaint as management level employees of Irex entities whose positions would cause concern for a business competitor. Doc. 61 ¶¶ 12 (alleging Rowe is President of a recently formed Irex subsidiary and previously served as President of defendant Vertical Access Solutions, LLC ("Vertical Access")), 13 (alleging Kwiatkowski is a District Manager for Irex Corporation and is involved directly with the business of Vertical Access with a focus on sales

---

[3]Although the Protective Order was entered in August 2016, it does not appear that the issue under dispute became apparent until recently. In early March of this year, when the dispute arose, defense counsel advised plaintiffs' counsel that the individual defendants had not yet been shown any confidential or AEO material, and therefore agreed not to do so until the court ruled. See Docs. 118 at 6, 118-1 at 52-53.

and business development), 14 (alleging Altmeyer is President of Vertical Access and previously served in a managerial position for Vertical Access with a focus on sales and business development), 15 (alleging Shriver serves in a managerial position for Vertical Access in customer site supervision), 16 (alleging Maupin is Southeast Area Manager for defendant Prime Industrial Access, LLC), and 17 (alleging Keene is Business Development Manager for Western region for Irex Corporation). The amended complaint alleges that these individuals and others unlawfully stole trade secret and other business sensitive information from Brand. These allegations are adequate to establish a reason for not sharing AEO-designated materials with these individual defendants.

Balancing the Pansy factors also weighs in favor of Brand's proposed modification. Brand's privacy interest in its proprietary business information is legitimate, and there is no indication it has an improper purpose in seeking protection. In light of the allegations in the amended complaint regarding stolen information, Brand alleges real harm that could come from the individual defendants' being privy to its sensitive business information. Although the individual defendants' interest in reviewing relevant discovery material is also legitimate, they have not established that the AEO designation will prevent them from defending Brand's claims. There is nothing to indicate that the risk of embarrassment or harm to health or safety are implicated in the modification at issue, and Brand is not a public entity or official and the proposed modification does not appear designed or likely to limit airing of issues of public interest. The interest in fairness and efficiency does not weigh clearly in either direction. On the one hand, adding the restriction should speed up production of Brand's discovery; on the other hand it may slow the Irex Defendants' review of AEO material as their counsel depend on the designated reviewer rather than all of the individual defendants to assist. In any event, I do not

believe that granting the modification will have a negative impact on the overall efficiency of the litigation.

It certainly does not weigh in Brand's favor that Brand could have but did not raise this specific issue previously. Moreover, Brand's suggestion that the Protective Order can be read in a way consistent with the meaning it seeks is simply wishful thinking. The language is unambiguous in allowing individually named defendants to see Brand's AEO discovery material. However, neither of these facts control the issue at hand, which is whether the court's Protective Order should be modified to remove that language. The Irex Defendants do not dispute that the specific issue of the individual defendants' review of Brand's AEO materials was never discussed among counsel for Brand and the Irex Defendants.[4] Rather, the Irex Defendants assert that they and other individual defendants were jointly negotiating the relevant language and that they have relied on the clause at issue, Doc. 118 at 6 n.3, but provide no communication to support the assertion nor explain how they relied or to what detriment. Nothing in the communications submitted by the Irex Defendants shows that <u>they</u> bargained for the ability to review AEO material or had the expectation of such review. They concede that no AEO documents have yet been reviewed by the individual defendants, and assert simply that they have "relied upon the Protective Order, assuming that they would be able to participate" in trial preparation. Id. at 6-7. This assertion does not establish that they would have taken any different action either in the negotiations or discovery to date.

---

[4] Brand asserts that the language at issue was proposed by other defense counsel on behalf of an individual defendant, Robert Russo. Doc. 110 at 5. The Irex Defendants concede this fact. Doc. 118 at 6 n.3. Mr. Russo and other individual defendants have since been dismissed from the case. The only individual defendants who remain are still associated with the Irex entities, and the same attorneys represent all defendants.

I also conclude that the provision calling for AEO to be viewed by "one employee of the Receiving Party" is strongly suggestive of these parties' intention to limit AEO to such designated employee. If the individual defendants themselves were reviewing the information, there would be little purpose in a carefully drafted provision detailing the selection of a single employee to review the material.

The Irex Defendants suggest that granting the motion will deprive the individual defendants of the ability to defend themselves from the very serious allegations Brand brings against them, some of which allege criminal conduct including RICO violations. Doc. 118 at 10-11. However, they provide scant caselaw to support a due process or other basis to deny the motion at issue. They cite two cases in this portion of their brief, but neither matches the circumstances of this case. In Merit Industries, Inc. v. Feuer, 201 F.R.D. 382 (E.D. Pa. 2001), Merit's predecessor company had been owned by Feuer, and after the sales transaction Feuer continued to run Merit's day-to-day operations until a new CEO was hired. Merit suffered a significant decline in sales, and it brought suit alleging that Feuer and the other defendants committed a number of illegal acts prior to the sale that misrepresented the nature of the company's business practices. The parties negotiated a confidentiality order governing their discovery, which the court adopted. As in this case, the confidentiality order allowed the parties to designate discovery material confidential or "highly confidential" based on the sensitivity of the information. Id. at 384. When the plaintiff produced extensive materials with the "highly confidential" designation, defendants filed a motion asking the court to remove the designation because the defendants were already privy to most of the information either because it was public or related to a time period when Feuer was still the owner of Merit's predecessor. Id. The Honorable J. Curtis Joyner granted the motion after applying the Pansy factors, concluding that

9

plaintiff did not show that designation of the materials as confidential rather than highly confidential would cause Merit harm. Id. at 385-86. Judge Joyner rejected the plaintiff's argument in significant part because "there is no evidence that the two companies are direct competitors, at least not at present." Id. at 385. Merit had argued that Feuer had a business relationship with one of Merit's chief competitors, but Judge Joyner's review of the record showed that they were not in fact competitors because they sold to different users. Id. at 385.

The difference between Merit and this case is that here, there is no dispute that the parties are direct competitors. Irex instead argues that this fact did not impact Judge Joyner's decision, and that Judge Joyner balanced the defendants' need to participate in their defense against Merit's allegation that it was protecting its sensitive business information. Doc. 118 at 11. This argument ignores the opinion, in which Judge Joyner was directly addressing and rejecting Merit's argument that its information needed protecting. Furthermore, although Judge Joyner noted that "the defendants are entitled to assist in the preparation of their own defense," this statement was made in the context of finding defendants' request for discovery legitimate in weighing the Pansy factors, and did not establish or cite a due process basis to deny the "highly confidential" designation to any discovery material. Id. at 385.

Irex also cites Martinez v. City of Ogden, No. 08CV87 TC-DN, 2009 WL 424785 (D. Utah Feb. 18, 2009), a case in which the plaintiff alleged wrongful termination and defamation. The defendant city, as part of the parties' litigation over the proper terms of a protective order, sought a provision allowing the designation of information as "highly confidential" and available only to counsel and not to the parties. The court rejected the provision, concluding that the defendant had not established a sufficient basis to prevent plaintiff's access in light of the fact that the defendant's asserted reasons all related to pre-suit conduct without any allegation of

10

current harm in the event of disclosure. There are obvious differences between Martinez and the case at issue, as that case involved a public party and the parties were not in any sort of competition or business relationship. As in Merit, the court considered the plaintiff's need to have a full and fair opportunity to litigate the case, which weighed against the AEO provision, but the court did not hold categorically that an AEO provision should never be adopted. Indeed, the court recognized that "[a]ttorney's-eyes-only protection is usually employed to protect against business harm that would result from disclosure of sensitive documents to a competitor." Id. at *2.

Finally, Defendants cite Greene, Tweede of Del. v. DuPont Dow Elastomers, LLC, Civ. No. 00-3058, 2002 WL 32349383 (E.D. Pa. Feb. 6, 2002), in support of their argument that reliance on the protective order for several months weighs against modifying it. Doc. 118 at 12. In Greene, Tweede, defendants sought to preclude the plaintiff's president from reviewing certain discovery. However, discovery was nearly completed when defendant filed its motion, and consistent with the protective order, plaintiff had long-since designated its president as the person to review discovery subject to the order. 2002 WL 32349383, at *3-4. Here, despite the passage of time, much discovery remains and the individual Defendants have not yet reviewed any AEO information.

Moreoever, unlike Greene, Tweede, it is important to note that the Protective Order does not prevent anyone associated with the defendants, other than counsel, from viewing AEO material. The parties are currently engaged in determining which individuals to designate pursuant to paragraph 16(d) of the Order, which allows access of AEO material by "one employee of the Receiving Party, who the receiving party will designate." If the parties are unable to reach agreement on such individuals, the Order permits the objecting party to file a

motion with the court. Thus, the individual defendants are not deprived of all opportunity for involvement by someone other than counsel and consultants to assist in reviewing AEO material.

It is also worth noting that the Protective Order allows the parties to challenge each other's designation of materials as AEO, and for the court to decide if a party has properly limited the individual defendants from viewing the material. Thus, for example, if the court determines that Brand has improperly restricted access through the AEO designation, that material can be disclosed to the individual defendants.

### D. Motion for Leave to File Reply

The Irex Defendants filed their opposition to the motion to modify on March 29, but Brand did not seek leave to reply until April 18, almost three weeks later. Under this court's Local Rules, responses to motions are due within fourteen days. Loc. R. Civ. P. 7.1(c). Judge Stengel requires parties to seek leave of court to file a reply. http://www.paed.uscourts.gov/documents/procedures/stepol.pdf (Judge Stengel's Procedures (II)(C)(2)). Although neither the Federal Rules nor the Local Rules specify any time restriction for replies, see Argonaut Ins. Co. v. I.E., Inc., Civ. No. 97-4636, 1999 WL 163639, at *2 (E.D. Pa. ar. 22, 1989), Plaintiff's delay of twenty days to seek leave to file a reply is inconsistent with the spirit of the Local Rule's requirement that responses to motions be filed within fourteen days, rendering the motion for leave to file late. As the Irex Defendants point out, Doc. 124 at 3, the proposed reply does not contain either argument or supporting evidence that could not have been submitted in the original motion. Nevertheless, in recommending that Brand's motion to modify be granted, I need not rule on its motion for leave to file, but rather recommend denying it as moot. For the same reason I recommend denying Brand's letter request for oral argument.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this 4th day of May, 2017, it is RESPECTFULLY RECOMMENDED Plaintiffs' Motion to Modify/Clarify the Protective Order be GRANTED and Paragraph 16(c) be stricken from the Protective Order. IT IS FURTHER RECOMMENDED that Plaintiffs' Motion for Leave to File a Reply Memorandum be DISMISSED AS MOOT. The parties may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

ELIZABETH T. HEY, U.S.M.J.

13