IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRAND ENERGY & INFRASTRUCTURE SERVICES, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| IREX CORPORATION, et al. | : | NO.  16-2499 |

## REPORT AND RECOMMENDATION ON
## ELECTRONIC DISCOVERY PROTOCOL SEARCH TERMS

ELIABETH T. HEY, U.S.M.J.                                        June    21, 2017

Plaintiffs, Brand Energy & Infrastructure Services, Inc., Brand Energy Services, LLC, and Gregg Industrial Insulators, Inc. (collectively "Brand") filed this trade secrets case against competitors IREX Corporation, Vertical Access Solutions, LLC, Prime Industrial Access, LLC, (collectively "Irex"), and various individual defendants.  As pled in the lengthy amended complaint, Brand provides scaffolding and related services for various industrial applications in certain geographic markets.  Doc. 61 ¶¶ 1-2.  In 2013, Brand acquired Harsco Infrastructure ("Harsco"), a competitor in the scaffolding business, "to obtain the ownership and benefits of the entire Harsco . . .  business unit, and Plaintiffs were to derive significant economic value because of the acquisition."  Id. ¶¶ 106, 112.  Brand alleges that the individual defendants used to work for Brand/Harsco but left to work for Irex-related entities, and that the defendants violated Brand's trademarks, stole its proprietary information from its computers, stole equipment, and violated restrictive covenants and duties of loyalty, all for the purpose of unlawfully competing with Brand and taking its customers and business.  Id. ¶¶ 25-32.

Discovery can be described as contentious.  However, the parties negotiated an Electronic Discovery Protocol, which the Honorable Lawrence Stengel entered on November 16, 2016 ("Protocol").  Doc. 89.  Pursuant to the Protocol, the Irex entity defendants are required to provide electronic devices or full verified forensic copies of the devices as defined in paragraph 3 of the Protocol to Plaintiffs' forensic discovery investigator, LCG Discovery Experts ("LCG"), and Plaintiffs are required to provide electronic devices or full verified forensic copies of the devices as defined in paragraph 3 of the Protocol to Defendants' forensic discovery investigator, LDiscovery, to allow LCG and LDiscovery to perform approved keyword/keyphrase searches on the electronic devices produced by the opposing party.  Id. ¶¶ 2-5.  Judge Stengel referred the case to me for, among other things, mediating a resolution of any dispute involving the search terms to be used and, in the event such mediation efforts failed, to prepare a Report and Recommendation as to the proper search terms to be utilized pursuant to the Protocol. Doc. 119.  On May 16, 2017, I held a conference to attempt to resolve the disputes regarding the search terms.  When those efforts proved fruitless, I conducted oral argument on the terms that remained in dispute.  I also asked counsel to confer regarding the devices to be searched and inform me of any discrepancies on or before May 26, 2017. [1]  This Report follows the argument and supplemental briefing.  Docs. 153 & 156.

---

[1]To the extent Brand objects to the production of Brand devices, Judge Stengel has already determined that specific Brand devices are subject to search pursuant to the Protocol.

> Because plaintiffs' claims include allegations that certain
> individuals used Brand devices to misappropriate

In determining the propriety of the proposed search terms, I am bound by the

Protocol and Judge Stengel's prior orders interpreting the Protocol and its scope.  The

Protocol provides for searches for the purpose of:

> identifying Plaintiffs' protected business information,
> evidence of misappropriation of Plaintiff's protected business
> information, or evidence of any Irex Individual Defendant's
> violation of non-competition, non-solicittion, and/or
> confidentiality obligations alleged owed to Plaintiffs or any
> other [Brand] subsidiary . . . [and]

> investigating and evaluating activity related to the existence
> of Plaintiffs' protected business information on the devices,
> and/or to the transfer, modification, deletion, access to, and/or
> use of Plaintiffs' protected business information, and/or the
> alleged violation of Plaintiffs' rights with respect to non-
> competition, non-solicitation, and confidentiality by any Irex
> Individual Defendant.

Doc. 89 ¶¶ 4-5.  To the extent the parties argue that certain search terms are irrelevant, I

am guided by Rule 26, which permits the parties to

> obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues
> at stake in the action, the amount in controversy, the parties'
> relative access to relevant information, the parties' resources,
> the importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

---

information, I find that these electronic devices are relevant to
defendants' defense of these claims.
Doc. 89 at 1 n.1.

### A.  Brand's Search of Irex Company Defendants' Electronics[2]

Of the 40 search terms[3] Brand proposed to be run on the Irex-related electronics,

the parties have come to agreement on 19 completely (Nos. 2, 4, 5, 8, 15, 16, 18, 27-36,

and 38), and portions of several other proposals.  Doc. 157 at 3, 13-37.  Those

agreements are adopted here and will be part of the searches.  During the oral argument,

Irex explained that its remaining objections were to terms that were overbroad by nature

or overbroad by subject matter.  With respect to many of the terms, Irex complains that

the search term is unrelated to any issue identified in the Amended Complaint because

that specific project or company is not named in the Amended Complaint.  However,

Plaintiffs allege in the Amended Complaint that Irex and the Individual Defendants

misappropriated Harsco/Brand's protected business information, utilized it to interfere

with Harsco/Brand's contracts and customer relations, and violated the Individual

Defendants' noncompete/nonsolicitation agreements.  Although Plaintiffs have identified

specific instances of such interference and misappropriation by naming projects or

contracting companies, considering the broad-based allegations, I will not confine

discovery to only those specific projects identified in the Amended Complaint.  Below I

will address each of the search terms to which there has not been agreement.

---

[2]Although the Protocol does not clarify this point, the parties are in agreement that there will be two sets of search terms; one for searches on Irex-related devices, and another for searches of Brand-related devices.

[3]Brand enumerated 40 search terms, some of which include multiple words or phrases related to one another.  Doc. 156-1 at 8-9.

In addition, Irex objects to the date range for the searches, arguing that they will have to incur additional, unnecessary costs to have electronics repeatedly imaged for Plaintiff's searches. I will address this objection at the conclusion of the discussion of the search terms.

1. Search Terms

    a. Search Term 1 – "Brand," "BEIS," "Gregg," "Harsco," or "Patent"

The terms proposed in Plaintiffs' first request are all current or prior iterations of Brand. Brand, BEIS, and Gregg are Plaintiffs. In 2013, Brand acquired its former competitor Harsco, and during the argument on the search terms, Plaintiff's counsel explained that Patent Construction is a Brand company. Clearly, the existence of the names of Plaintiffs' companies or companies acquired by Plaintiffs on the Irex computers are relevant to claims that Irex took Brand's protected business information or that the individual Irex Defendants violated non-compete or non-solicitation agreements. Such names could appear on forms or marketing strategies designed or developed by or for the Brand companies that were misappropriated by Irex or in emails evidencing violations of the non-compete and non-solicitation clauses.

Irex responds that these terms are overly broad, unduly burdensome, and not proportional to the needs of the case. Doc. 153 at 11.[4] Specifically, Irex complains that generic words like "brand" and "patent" "will result in a myriad of false hits unrelated to

_____

[4]Irex introduced Exhibit D1 (a list of its objections) at the May 16 hearing. Irex later incorporated that exhibit into its post-hearing submission, Doc. 153 at 11-24, which I will cite here.

the Plaintiffs or this litigation." Id. Despite the possibility of a number of false "hits,"[5]

considering the claims at issue, the relevance of these terms outweighs the possibility of

having to cull a high number of hits. Irex has denied Plaintiffs' claims of

misappropriation of trade secrets and violations of the relevant agreements. Plaintiffs

must be permitted to search Irex's devices for evidence of such misappropriation and

there is no more direct way than searching for Plaintiffs' information using its names.

Moreover, Defendants have not alleged that such terms frequently appear in any of the

documents they generate in conducting their business. These are companies in the

business of supplying scaffolding and insulating material; they are not in the business of

intellectual property. Thus, the term "patent" is unlikely to arise in its common noun

form. Likewise, although the term "brand" is generic, a customer is likely to identify a

product by its name or commercial brand rather than by use of the word "brand." I would

not expect the word "brand" in its verb form to have any place in the world of scaffolding

and insulation. Indeed, Plaintiffs assert that their test run resulted in 61 documents on the

laptops of Defendants Jeffrey Maupin and Denver Keene, and 460 on Defendant Albert

---

[5]Plaintiffs have provided the results from term searches performed on Irex's first thirteen document productions, which includes approximately 50,000 documents. Doc. 156-1 at 16. The parties rely on the number of "hits" from those searches to support their arguments. This number does not necessarily correlate to the number of documents in which the word appears, as a search term may appear more than once in a single document, and the parties are not always clear in their use of the term (referring to number of instances versus number of documents). Information about the number of hits is useful to assess the likely burden of a search, although it is an imperfect measure as one cannot know without further investigation whether the document is relevant (i.e., one search yielding 400 documents may all prove relevant and another search yielding the same number may all prove irrelevant).

Rowe's laptop.  Doc. 156-1 at 15.  Thus, I recommend that Defendants' objection to the first search terms be overruled.

           b.      Search Term 3 – "Must /3 win!," "Key /3 win!," "pipeline /3 target!"

In the Amended Complaint, Plaintiffs described the Market Playbook as a "proprietary, web-based Brand application" which "contains complete, detailed information about existing Brand business and business opportunities going forward." Doc. 61 ¶¶ 158-59; Doc. 157 at 15.[6]  In the Market Playbook, Brand and Harsco use the terms "Must wins," Key wins," and "pipeline targets" to refer to protected business information contained in the Playbook.  Doc. 157 at 15.

Irex argues that these phrases are commonly used outside of the context of the Market Playbook, and therefore are overly broad, unduly burdensome, and not proportional to the needs of the case.  Doc. 153 at 12.  Irex has not alleged that these terms are commonly used in the industry or that Irex had historically used such terms. Although not intimately familiar with the world of scaffolding and insulators, I find it difficult to imagine how such phrases would be common parlance in that realm.  The results of Plaintiffs' test run were manageable with 209 documents registering a hit for these three terms.  Doc. 156-1 at 16.  Thus, Defendants' objection to searching for these three terms should be overruled.

---

[6]Defendants have agreed to run the term "Playbook."  Doc. 157 at 14.

c.    Search Term 6 – "IrexScaffold PlanModeling," "Oracle Labor Costing," "Profield," "Schedule D," "September Rental MCC," "Tag 13 Thru 18 MCC," "VAS Target Rates Master," "1121_001," "4 pics from Eric," "7114*pdf" or "7114*dwg"[7]

Plaintiffs contend that these terms refer to "specific documents that contain Plaintiffs' protected business information." Doc. 157 at 17. With respect to "IrexScaffoldPlanModeling," Plaintiffs note that a document called "IrexScaffoldPlanModeling" was found on Robert Russo's personal computer and the document contained protected business information, which was last accessed while Mr. Russo served as a consultant for Irex, justifying a search for this specific phrase.[8] Id.

Irex complains that these terms are "overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that such terms are unrelated to any issue identified by Brand in its Amended Complaint." Doc. 153 at 13. Irex specifically objected to the term "Schedule D" as overly broad, arguing that "it will encompass any and every bid, contract, or other document with a 'Schedule D,' regardless of its relevance to this litigation." Id. Defendants have not asserted that their contracts or other correspondence routinely contain anything entitled Schedule D, and if they do, what percentage of the contracts/correspondence contain such language. Defendants have

---

[7]Irex has agreed to the search terms "Costing Labor Event Data Loader Template, "Oracle Projects Events Data Loader Template," "oracle Rental Costing," and "VAS Price Template." Doc. 153 at 13.

[8]Robert Russo was the President of Harsco, and he remained at Brand briefly after Harsco's acquisition. Doc. 61 ¶¶ 68-69. He is the CFO of Acrow Bridge and from January 2014 to June 2014, allegedly worked as a consultant to Irex. Id. ¶ 11. Plaintiffs originally named Mr. Russo as an individual defendant in this case, but voluntarily dismissed him on November 16, 2016. Doc. 88.

offered no specific argument regarding the remainder of the terms in this category. Without a more definitive assertion that the terms in this category are generic, I am not persuaded by Irex's challenge and recommend that Irex's objection be overruled.

d.      Search Term 7 – "Domnion"[9]

In the Amended Complaint, Plaintiffs allege that Dominion Resources is a Brand customer, and refers to different Dominion Resources' projects/plants with which Irex allegedly interfered.  Doc. 61 ¶¶ 236-37 (referring to former Defendant Joseph D'Ulisse's transfer to Brand drawings to Irex regarding Dominion Resources' Possum Point Power Station), ¶¶ 274-77 (alleging that Irex used Brand protected business information to obtain work at Dominion Resources' Virginia City Plant), ¶ 267 (alleging that Vertical Access used Brand protected business information to secure work at Dominion Clover Point Power Plant).  Plaintiffs therefore argue that "Dominion" is a relevant term and that "[n]o Irex company has a comparable relationship" with this plant/customer.  Doc. 156-1 at 4.

Irex objects to the term "Dominion" as overbroad because only certain Dominion projects are at issue in the litigation.  Doc. 153 at 14.  Irex seems to take the position that Brand is entitled to search for only those Dominion projects specifically mentioned in the Amended Complaint.  I disagree.  Irex has not asserted that it had any prior business relationship with Dominion Resources.  Brand has alleged that it had a working relationship with Dominion with which Irex interfered through prior Brand employees.  It

_____
[9]Irex has agreed to the terms "Clover," Mount Storm," "Mt. Storm," "Mt Storm," and "Virginia City."  Doc. 153 at 14.

is entitled to search for "Dominion," and I will recommend that Irex's objection be rejected.

        e.        Search Term 9 – "Luke," "New Page," "Paper Mill," and "Yoder"[10]

According to the Amended Complaint, prior to its acquisition by Brand, Harsco held the contract for scaffolding and other services at the Westvaco Paper Mill in Luke, Maryland. Doc. 61 ¶ 251. Brand alleges that Defendant John Kwiatkoski utilized bid information that he had taken from Brand to obtain the Westvaco work for Vertical Access. Id. ¶ 254. Additionally, Brand alleges that Mr. Kwitatkowski misappropriated Brand scaffolding equipment to provide it to the Westvaco Paper Mill by creating sham contracts. Id. ¶ 259. In the discussions regarding the search terms, Plaintiff explained that the sham contracts were with a Brand customer, Yoder and Sons. Rather than providing the scaffolding to Yoder, the scaffolding was allegedly sent to Vertical Access so that it could perform the Westvaco job. Doc. 156-1 at 21. Therefore, Brand seeks to search for terms related to the Westvaco plant and those sham contracts.

Before turning to Irex's response, I note that Brand's only reference to the term "New Page" is as part of the plant it calls "Luke/New Page/Westvaco Paper Mill." Doc. 156-1 at 21. Brand has not established the relevance by itself of the term "New Page" and how searching for references to this plant by its title and location would be inadequate. Therefore, I will recommend that Irex's objection to the search term "New Page" be sustained.

----

[10]Irex has agreed to the term "Westvaco," and suggests "Luke w/5 paper." Doc. 153 at 15.

With respect to the other terms, Irex responds that the terms are overly broad, unduly burdensome, and not proportional to the needs of the case because the terms will likely result in false hits. Doc. 153 at 14. As an example, Irex argues that searching for "Luke," will pull every document concerning anyone named Luke. Id. Plaintiff's counter, however, that test searches on the Keene and Maupin laptops did not result in a significant number of hits. Doc. 156-1 at 21. Although Brand concedes that the search of Mr. Rowe's laptop did uncover a significant number of hits, Brand contends that this is directly related to the fact that Rowe, who was the President of Vertical Access, Doc. 61 ¶ 5, "apparently misappropriated a large number of documents." Doc. 156-1 at 21.

Again, Irex has not alleged that it had significant business ties with the Westvaco Paper Mill prior to the incidents alleged in this case. I find that it is reasonable to refer to the Paper Mill by its location in Luke, which is not a terribly common given name. Thus, I recommend that Irex's objection with respect to the remaining search terms in this category be rejected.

f.      Search Term 10 – "Bowline," "NRG," or "NRG Bowline"

The crux of Irex's challenge to the search terms Bowline and NRG is that neither is specifically mentioned in the Amended Complaint. Doc. 153 at 15. In responding to Defendants' objection, Brand explains that prior to Vertical Access being awarded a contract for outage work at the NRG Bowline Plant in 2014, Harsco and then Brand had held that contract for more than a decade. Doc. 156-1 at 22. Plaintiffs believe that the Individual Defendants and others tortuously interfered with Brand's relationship with NRG by using Plaintiff's protected business information to bid on the contracts at the

11

Bowline plant. In support of this belief, Plaintiffs state that they have seen documents produced by Irex relating to the NRG Bowline contract that appear to be Vertical Access documents, but whose metadata reveal that they contain Plaintiff's protected business information. Id.

Considering the allegations in the Amended Complaint that Irex and the Individual Defendants have misappropriated Plaintiffs' protected business information and utilized it to interfere with Plaintiffs' contracts, Doc. 61 ¶¶ 333-34, the ongoing nature of the discovery production, and Plaintiffs' allegation that evidence has been produced that Defendants interfered with the NRG Bowline contract, I recommend that Defendants' objection to these search terms be rejected.

g.      Search Terms 11 & 12 – "AECOM" and "Beale"[11]

In the Amended Complaint, Plaintiffs have alleged that Mr. Keene, using his knowledge of the Brand bid on a project for AECOM called Four Corners, proposed a bid on behalf of Irex that undercut Brand's bid. Doc. 61 ¶ 325(i). Plaintiffs want to search Irex's devices for the term AECOM, and also seek to search for the related term "Beale," the last name of the Deputy Program Director for AECOM. Doc. 156-1 at 13-15. Irex objects to the term "AECOM," arguing that it is overly broad, unduly burdensome, and not proportional to the needs of the case "because AECOM is a multinational company with thousands of projects around the globe and the Amended Complaint only concerns a single site." Doc. 153 at 15. Irex also argues that Brand's allegations regarding Mr.

---

[11]Defendants have agreed to run the terms "APS," "Arizona Public," and "Four Corners." Doc. 153 at 16.

Beale relate only to Defendant Denver Keene, and thus the term is "overly broad, unduly burdensome, and not proportional to the needs of the case."  Id. at 16.

Plaintiffs have referred to evidence that individual defendants maintained contact with the Deputy Program Director for AECOM after leaving Brand, including taking the Deputy Program Director for AECOM to the Citrus Bowl after leaving Brand and attending a pre-bid meeting with AECOM after leaving Brand which may violate the former employees' anticompetition/antisolicitation agreements.  Doc. 61 ¶¶ 325(h)-(j); Doc. 156-1 at 24; see also Doc. 61 ¶¶ 325(j) (alleging that Maupin, Keene met with Rowe regarding Four Corners), 326 (Maupin and Keene met with representative of AECOM without the knowledge of the AECOM contact at Brand), 327 (Maupin and Keene solicited work from AECOM).  I conclude that the search for the more broad-based "AECOM" rather than limiting the search to the Four Corners project is justified, as is the term "Beale."

> h.     Search Term 13 - "AES"[12]

In the Amended Complaint, Plaintiffs allege that misappropriated equipment was stored by Irex and some of the individual defendants at the AES Warrior Run Generating Station in Cumberland, Maryland, before being transferred to the Clover Power Plant for unauthorized use by Vertical Access.  Doc. 61 ¶¶ 269-70.  In responding to Irex's response to the search-term request, Plaintiffs stated that Irex has already produced documents relating to the AES Warrior Run plant that appear to be Vertical Access documents, but whose metadata reflects that they contain Plaintiffs' protected business

---

[12]Irex has agreed to run the term "Warrior Run."  Doc. 153 at 16.

information.  Doc. 156-1 at 25.  According to Irex, "AES is a multinational company with thousands of projects around the globe and the Amended Complaint only concerns a single site."  Doc. 153 at 16.  Thus, Irex argues that a search for AES is overly broad, unduly burdensome, and not proportional to the needs of the case.  Id.

Plaintiffs have asserted that AES has been a long-time customer of Harsco/Brand.  Doc. 156-1 at 25.  Irex has not alleged any established business relationship with AES, undermining its claims of a burdensome search.  Moreover, despite the claims of overbreadth and burden, the test search by Plaintiffs did not appear overwhelming with 106 hits for Mr. Keene, 38 for Mr. Maupin, and 1,151 for Mr. Rowe.  Id.  I recommend that Irex's objection be overruled.

i.     Search Term 14 – "Almega"[13]

In the Amended Complaint, Plaintiffs allege that after leaving Brand, Defendant Christopher Altmeyer used Brand protected business information to obtain a contract that had previously belonged to Brand at the Almega County Fire Water Storage Tank in Ohio, and used Brand equipment to service the project.  Doc. 61 ¶ 287-90.  Irex argues that the term "Almega" is overly broad because it is used to refer to other companies and locations unrelated to the Almega County Fire Water Storage Tank.  Doc. 153 at 17.  Irex has not asserted that it has any established business relationship with any company or project named Almega and has not identified any other project or company located in Almega County.  Moreover, Brand reports that the results for the tests performed by

---

[13]Defendants have agreed to the search term Versitech, and suggest searching for "Almega County," or "Almega w/5 (storage or fire or tank)."  Doc. 153 at 17.

Brand on Irex produced information have been "modest" with 0 hits for Mr. Keene and Mr. Maupin and 173 for Mr. Rowe. Doc. 156-1 at 26. Under these circumstances, the search for Almega does not seem overly broad or unduly burdensome, and seems proportional to the needs of the case in light of the allegations in the Amended Complaint. I will recommend that the objection to "Almega" be rejected.

j.      Search Term 17 – "Chesterfield"

Irex complains that this search term is unrelated to any issue in Brand's Amended Complaint or otherwise. Doc. 153 at 18. In response, Plaintiffs note that Harsco/Brand had a long-standing contract for outage work at the Dominion Chesterfield plant. Doc. 156-1 at 27. Plaintiffs also refer to documents produced by Irex that purport to be Vertical Access documents relating to the Dominion Chesterfield plant, whose metadata reflects that the documents contain Plaintiffs' protected business information. Id. Based upon the allegations in the Amended Complaint, and the contents of the documents already produced, a search for "Chesterfield," is relevant.

To the extent Irex complains that the search for Chesterfield would be unduly burdensome, Doc. 153 at 18, Plaintiffs have already run the search with manageable results (Mssrs. Maupin and Keene - 92 hits, Mr. Rowe - 698 hits). Doc. 156-1 at 27. Therefore, I recommend that Irex's objection be rejected.

k.      Search Term 20 – "Ivanpah," or "NRG Ivanpah"

Although Ivanpah does not appear in the Amended Complaint, Plaintiffs identify Ivanpah as an NRG plant located in California, and suggest that Keene and/or Maupin improperly solicited business related to Ivanpah for Irex in violation of their

antisolicitation agreements.  Doc. 156-1 at 28-29.  Plaintiffs ask that these terms be searched on all of the Individual Defendants' Irex-issued devices, and represent that Defendants have suggested running the requested search terms on only the computer of Maupin or Keene depending on which of them allegedly improperly contacted the customer.  Id. at 29.  Defendants argue that these terms are overbroad, unduly burdensome, and not proportional to the needs of the case because they are unrelated to issues identified in the Amended Complaint.  Doc. 153 at 19.

In light of Plaintiffs' assertion that Mssrs. Maupin and Keene contacted Ivanpah in violation of their non-compete agreements, I conclude that Irex's suggestion is tailored to address that issue.  Therefore, I recommend that the court permit the search of the Irex-issued devices of Mr. Maupin and Mr. Keene for the terms "Ivanpah" and "NRG Ivanpah."

l.        Search Term 21 – "Sundt" [14]

Irex objects to this search term, noting that it is unrelated to any issue in the Amended Complaint.  Doc. 153 at 19.  Brand responds that the APS Four Corners Project, for which Defendant Keene allegedly undercut Brand's bid, was a joint venture between AECOM and Sundt.  Doc. 156-1 at 29.  According to Brand, Irex has offered a compromise, allowing the search to be run on the Maupin and Keene electronics.  Id.  This seems a viable compromise because Plaintiffs have alleged that Sundt was a

---

[14]Irex has agreed to run the search terms in categories 22 ("Russo" or "rj_russo") and 23 ("Georg," "jgeorg," "charity2700," or "johng2700"), but objects to the time period for such search.  Doc. 153 at 20.  This will be addressed at the conclusion of the discussion of the individual search terms.

customer that these Defendants were prohibited from soliciting pursuant to their nonsolicitation/noncompete agreements. Again, Irex's suggestion is tailored to address the issue. I recommend that the search for "Sundt" be limited to the Irex-issued devices issued to Mr. Maupin and Mr. Keene.

m.      Search Term 24 – "Walls"[15]

In the Amended Complaint, Plaintiffs allege that after leaving Brand, Defendants Rowe, Kwiatkoski, and Altmeyer conspired with Cathy Walls, a former Sales and Management Administrative Assistant at Brand, to obtain unauthorized access to Brand's computers and information. Doc. 61 ¶¶ 20, 337. Irex complains that the term "walls" is overly broad, especially considering that these companies are in the construction services industry. On the test runs done by Plaintiffs on the Keene, Maupin, and Rowe computers, they obtained 1,010 hits. As an alternative, Plaintiffs suggested running the terms "Cathy and Walls." Doc. 156-1 at 32. I agree that a more narrow search would provide a better filter to eliminate false hits in which any employee named Cathy mentioned walls. Therefore, I recommend that the court allow a search of the individual defendants' Irex-issued electronics for "cathy/3 walls." This should target documents containing Ms. Walls' name without capturing superfluous correspondence or documents.

n.      Search Term 25 – "Matt Smith" or "Smitty"

Irex objects to these search terms because they are unrelated to any issued in the Amended Complaint, and also argue that this is a common name and nickname that will

---

[15]Irex agrees to run the search term "cwalls626." Doc. 153 at 20.

result in false hits. Doc. 153 at 21. Brand replies that John Georg, a former Harsco/Brand employee who joined Vertical Access, testified at his deposition that an Irex-employee, Defendant Terry Shriver, told him that he could obtain Brand's protected business information from Brand employee Matt Smith, whose nickname is "Smitty." Doc. 156-1 at 32-33. Considering that Brand has alleged a conspiracy by Irex employees to obtain Brand's proprietary information and use it to interfere with Brand's contracts and customer base, evidence of an Irex-employee's improper contact with a Brand employee is relevant to the claims in the Amended Complaint.

To the extent Irex complains that a search for these terms will yield many false hits, Doc. 153 at 21, the test run by Plaintiffs does not support such an assertion as there were no hits on the three computers for "Smitty," and only one hit for "Matt Smith." Doc. 156-1 at 33. Therefore, I recommend that the court reject Defendants' objection to these search terms.

o.      Search Term 26 – "Stonestreet"

Irex complains that "Stonestreet" is unrelated to any issue in the Amended Complaint, and is overly broad, unduly burdensome, and not proportional to the needs of the case. Doc. 153 at 21. Plaintiffs explain that Irex has produced an email showing that Austin Stonestreet, a Brand employee, forwarded a document containing Plaintiffs' protected business information to Mr. Rowe. Doc. 156-1 at 33. Other Irex-produced documents show that Irex planned to hire Mr. Stonestreet to act as the "VP/GM" of a newly formed Irex entity. Id. at 24. According to Brand, Irex has offered to run the term through Mr. Rowe's devices only. Id. at 33. The search of Mr. Rowe's devices is clearly

relevant to the claim of misappropriation of Brand protected business information in light of the email produced in discovery. The search of other devices for the term "Stonestreet" is more problematic and appears to be more of a fishing expedition rather than a search for evidence relevant to the claims in the Amended Complaint. Although Brand alleges a conspiracy to misappropriate Brand business information, interfere with Brand's contractual and business relationships, and various violations of anticompetition/antisolicitation agreements, the only allegation in response to Irex's objection to the broader search for "Stonestreet" is that Defendants had a plan to hire Mr. Stonestreet as the "VE/GM" of a new Irex entity. Id. at 34. This may have just been wishful thinking on the part of Irex. Without a more concrete basis for a broader search I will recommend that the court deny the request for this search on any devices other than Mr. Rowe's.

         p.       Search Term 37 – "Denver"[16]

Irex has objected to running the term "Denver," which is Mr. Keene's first name, as overly broad, unduly burdensome, and not proportional to the needs of the case considering that Denver is the name of a major city and will result in a number of false hits. Doc. 153 at 23. I note that Irex has not indicated that it has any contracts related to Denver, Colorado, or customers located in Denver, or if so, what percentage of its business relates to Denver. Considering the allegations in the Amended Complaint and Mr. Keene's alleged complicity in the scheme, the request is reasonable. The test runs do

---

[16]Defendants have agreed to run the terms "Keene," "dkeene," and "denverkeene." Doc. 153 at 23.

not indicate an inordinate number of hits with 2 for Mr. Maupin's device, 646 for Mr. Rowe's, and 1,085 for Mr. Keene's. Therefore, I recommend that the objection to this term be rejected.

q. Search Terms 39 & 40 – "Chevis" or "kchevis" and "Macey"

According to Brand, Kevin Chevis is a former Brand employee that Irex-produced documents establish was solicited by one or more of the individual defendants to join Irex. Doc. 156-1 at 36. Brand has not identified these individual defendants. Brand claims other documents produced by Mr. Russo show that John Banks, presumably an Irex-related individual, asked Mr. Russo for Chevis and Chris Macey's contact information. Id. Mr. Banks is not named in the Amended Complaint and his relationship to the alleged conspiracy is unclear. There is no indication that Mr. Russo supplied the information or that it was for any nefarious purpose. This allegation is insufficient to allow a broad-based search of all the electronics. Once Brand identifies the individual defendants that the Irex-produced documents establish attempted to solicit Mr. Chevis, I recommend that the court permit Plaintiffs to search for "Chevis" or "kchevis" only on the electronics of that/those individual defendant(s). There is no basis to allow for a search for the term "Macey."

2. <u>Date Ranges</u>

Throughout their objections, Irex complains about the date ranges proposed by Brand. In most cases, Brand wants the searches run through documents and files dated from January 1, 2013 through December 31, 2016. Irex complains that the December 2016 date is long after the parties began discussing the forensic examination of devices

and after Irex had the devices forensically imaged.  Doc. 153 at 11.  According to Irex, all

devices subject to the Forensic Protocol were imaged through June of 2016, and the date

range proposed by Brand will require Irex to incur considerable expense to have the

devices re-imaged.  Id. at 5.  In its objections, Irex stated that it "will consider incurring

the additional burden and expense of forensically imaging devices multiple times if

Brand is able to provide reasonable support for the proposition that a specific custodians'

[sic] files should be searched for a specific term and that such information is not

otherwise available from a more convenient source . . . ."  Id.  This is a reasonable

compromise.  Therefore, I recommend that the searches be run on the forensic images of

the devices that were imaged through June 2016.  If relevant evidence is discovered,

Brand may ask for the searches to be run on reimaged devices on which such evidence

was found.[17]

**B.**     **Irex's Search of Brand's Electronics**

Irex's search terms are broken into five topics.  Plaintiffs argue that some of the

topics are beyond the scope of the Protocol.  Rather than addressing the search terms

individually, I will address them by topic and address specific terms only as necessary.

There does not seem to be any dispute regarding any date range for the search.

---

[17]In ruling on motions to compel, I concluded that Defendants' interrogatory and
document responses should be governed by an end date of December 31, 2016.  Doc. 178
¶ 3.  Any supplemental production based on that order in addition to the results of
searches pursuant to the Protocol may form the basis for Brand's request to broaden the
end date for imaging of given devices.

As previously noted, <u>supra</u> at 3, the Protocol calls for searches to identify (1) Plaintiff's protected business information, (2) evidence of misappropriation of such information, and (3) evidence of the violation of any obligation owed to Plaintiffs by an individual defendant.  Doc. 89 ¶ 4.  The authorized purpose to search is to "investigat[e] and evaluat[e] activity related to the existence of Plaintiffs' protected business information on the devices, and/or to the transfer, modification, deletion, access to, and/or use of [such] information, and/or the alleged violation of Plaintiffs' rights with respect to non-competition, non-solicitation, and confidentiality by any Irex Individual Defendant."  <u>Id.</u> ¶ 5.

      1.     <u>Topic 1 – Communications and documents to or from individuals at Irex</u>

In this request, Irex asks for a search for the following terms "*irex.com," "*verticalaccess.com," "*primeindustrial.com," "*argus.com," "*Irex*," "*VerticalAccess*," "*primeindustrial*," "prime industrial," "*enterpriseindustrial*," and "enterprise industrial."  Doc. 158 at 2.  Each of these entities is an Irex company and named defendant in this case.  Defendants contend that the search terms are "designed to discover information regarding communications between the Individual Defendants and Irex *while the Individual Defendants worked for Brand* and is therefore 'related to . . . the [alleged] transfer . . . of Plaintiffs' protected business information.'"  Doc. 153 at 2.  Plaintiffs contend that the terms in Topic 1 do not relate to any of the authorized searches under the Protocol.  Doc. 156 at 2.

In the Amended Complaint, Plaintiffs allege that the Individual Defendants obtained Brand protected information by copying or transferring it before they left, Doc. 61 ¶¶ 35, 152, misappropriating and supplying it to Irex, id. ¶ 139, and using Brand employees to access Brand information after their departure. Id. ¶ 337. In defending its own search terms (to be run on the Irex devices), Brand asserted that Irex could gain access to Brand information through additional Brand employees not named in the Amended Complaint. Doc. 156-1 at 32-33. Clearly, emails and correspondence located on Brand's devices between the Brand companies and the Irex companies are relevant to Plaintiffs' claims and Irex's defense of those claims. I recommend that Brand's objection to the terms in Topic 1 be rejected.

2.      <u>Topic 2 – Project-related documents (organized by project or customer)</u>

This topic includes the following search terms: "Mount Storm," "*mountstorm*," "Mt Storm," "Mt. Storm," "Ergon," "West Vaco," "Westvaco," (Luke w/5 Paper), (*AECOM* w/5 Arizona), "Arizona Public," "APS," "AZ public," "*azpublic*," "Four Corners," "*fourcorners*," "U.S. Power," "US Power," "U.S. Energy," "Astoria," "Warrior Run," "Clover," "Virginia City," "Hybrid Energy Center," (Almega w/5 (storage or fire or tank)), "Almega County," (Harrison w/20 (first or energy or firstenergy or power or Haywood or "West Virginia), "Beeler," "MarkWest," "Hopedale," and "Dominion." Doc. 158 at 3. Defendants contend that these terms will "reveal documents regarding alleged relationships, the existence (or lack thereof) of any confidential information concerning these relationships, [and] whether any confidential information

concerning these customers was improperly accessed or transferred." Doc. 153 at 2-3. Defendants contend that these terms seek documents related to Plaintiff's protected business information on the devices, the transfer, modification, deletion, access to, or use of Plaintiff's protected business information, and/or violations of the non-competition, non-solicitation, and confidentiality agreements. Id. at 3.

Plaintiffs challenge the propriety of these terms under the Protocol and argue that the searches will reveal vast numbers of irrelevant documents. Doc. 156 at 2-3. I disagree that these are irrelevant terms. With respect to the propriety of the searches for Westvaco, Warrior Run, Clover, Mt. Storm, Ergon, Four Corners, APS, Virginia City, Almega, and Dominion, Plaintiffs have, either in the Amended Complaint or in justifying their own search terms (of Irex devices), identified these projects or customers as those targeted by the alleged Irex conspiracy. Evidence of the Irex Individual Defendants' transfer of information regarding these projects and customers is relevant to their alleged violation of non-competition, non-solicitation, and confidentiality agreements, and is a proper basis for a search pursuant to the Protocol.

However, Plaintiffs' concern regarding the burden of wading through the documents containing these terms is reasonable considering the resulting number of hits for these search terms. Doc. 156 at 3 (listing between 5,000 and 200,000 hits).[18] This is not surprising given that these are Brand customers on Brand computers. One way of

---

[18]Despite its reference to the number of documents when discussing some of the searches on Irex devices, Plaintiffs rely on the number of individual hits when discussing searches of Brand devices, as each hit must be reviewed for relevance and privilege. Doc. 156 at 3 n.9. I fail to see the logic in this distinction, as any document with a hit must be reviewed in its entirety to determine confidentiality and/or privilege.

reducing these numbers is to run the search for each project or customer only on the computers assigned to or used by the Individual Defendant(s) at Brand who are/were assigned to that account or project at Brand. I will recommend that the searches be limited to this extent.

There is also disagreement regarding the Irex-proposed term "Versitech."[19] The allegations in the Amended Complaint include Mr. Altmeyer's orchestrating the fraudulent rental of Brand equipment by Versitech for use by Vertical Access. Doc. 61 ¶ 290. Consistent with my recommendation on the projects/accounts above, I will recommend that the search for "Versitech" be limited to Mr. Altmeyer's devices.

3. <u>Topic 3 – Alleged misappropriation of trade secrets and confidential information (organized between general categories and specific files identified by Brand</u>

Irex maintains that the list of 43 trade secrets listed in Topic 3 was taken from Brand's responses to Irex's interrogatories. Doc. 158 at 4-5. Irex seeks to "compare Brand's alleged trade secrets with documents Brand claims Irex misappropriated to determine if they are identical or, if not, what changes were made, by whom, and when." Doc. 153 at 3. Brand has agreed to run all but three of the search terms in Topic 3. Doc. 156 at 3. Brand objects on proportionality grounds to running the terms "Scaffold Tracker," "TIV," or "playbook," arguing that the terms received a high number of hits

---

[19]The term "Versitech" was a separate category in the original list provided by Irex. Doc. 153 at 32. In responding to Irex's search terms, Brand included "Versitech" in its discussion of the project related documents in Topic 2. Doc. 156 at 3.

when run on all of Plaintiffs' devices.[20]  Id. at 3 n.10 (Scaffold Tracker - 113,836, TIV - 13,019, and playbook - 5,775).

Despite Brand's argument that the burden of running these searches is not proportional to the needs of the case, these are the very programs and trade secrets that Brand claims Irex misappropriated.  Doc. 61 ¶¶ 187-89, 194, 200.  Irex should be permitted to compare the allegedly misappropriated information on its devices with that on the devices from which it was allegedly taken.  For purposes of this comparison, however, it is not necessary to review 118,000 hits for a single term.  Rather, a cross-section of fifty documents for each of these terms on each device should suffice to allow Irex to conduct its comparison to develop any defense.  Therefore, I will recommend that the search be run for the three search terms, but the production be limited to the first 50 relevant documents containing hits for each term on each device.

### 4.      Topic 4 – "Kroll" or "*kroll.com" or "Odanna"

Finally, Irex seeks to search for non-privileged communications by Brand's third-party investigator, Kroll, with third parties.  Doc. 158 at 5; Doc. 156 at 3.  This search term request is intertwined with a motion to compel filed by Irex in which Irex sought documents relating to Brand's investigator's discussions with third parties.  Doc. 126 ¶ 10.  I have ruled on that motion and required a production of that information.  Doc.

---

[20]As outlined in the Amended Complaint, the Market Playbook "is a proprietary, web-based Brand application," which "contains complete, detailed information about existing Brand business and business opportunities going forward for many years" and is accessible only by computers recognized by the Brand network.  Doc. 61 ¶¶ 158-59.  "TIV" or total investment value refers to the playbook's "projection of the total value of each customer work project."  Id. ¶ 169.  The Scaffold Tracker is a Brand proprietary business program used to track equipment, inventory, costing, and invoicing.  Id. ¶ 193.

178 ¶ 1(e).  That production is sufficient to comply with Plaintiffs' discovery obligations with respect to the topic of its investigators' discussions with third parties, and I will recommend that this topic be excluded from the Protocol search.

### C.     The Devices to be Searched

As is characteristic of the discovery process in this case, counsel did not come to an agreement regarding the devices to be searched pursuant to the Protocol.  In fact, the simple request that counsel identify the devices to be searched resulted in accusations of failing to comply with the obligations to meet and confer, misrepresentation of their meetings and emails, and spoliation.

### 1.     Irex's Devices to be Searched

Pursuant to the Protocol, Irex is required to provide electronic devices or full verified forensic copies of the devices which were

> (a) issued by any of the Irex Company Defendants to any of the Irex Individual Defendants, (b) issued by any Irex Company Defendant and used by any Irex Individual Defendant at any time before or during his employment or consulting arrangement with an Irex Company Defendant . . .

Doc. 89 ¶ 3.  Defendants have identified 18 items:  Bert Rowe's Irex-issued laptop, desktop, Verbatim thumb drive, Innovera thumb drive, and mobile phone; John Kwiatkoski's Irex-issued laptop, mobile phone, and second mobile phone; Chris Altmeyer's Irex-issued laptop, mobile phone and second mobile phone; Terry Shriver's Irex-ssued laptop, mobile phone, and second mobile phone; Jeffrey Maupin's Irex-issued laptop and mobile phone, and Denver Keene's Irex-issued laptop and mobile phone. Doc. 159 at 5.

According to Plaintiffs, they were dissatisfied because defense counsel failed to confirm whether the list included every device ever issued by an Irex entity to the Individual Defendants. Doc. 159 at 1. If additional devices are identified pursuant to Paragraph 5(a) of the Order issued on June 16 (Doc. 178 ¶ 5(a)), I recommend that they be searched with the limitations outlined in this Report.

Plaintiffs also express displeasure at Defendants' failure to provide dates identifying when each of the devices on the list was imaged. I have recommended that the image for any device that has already been imaged will suffice for the initial search. Supra at 20-21. If relevant documents are found on a given device, Brand may request that the device be re-imaged and the search terms that had previously produced hits may be run on an updated image.

In my Order addressing Brand's Motion to Compel (Doc. 134), in which it challenged Irex's cut-off of June 2016, for the documents subject to production, I concluded that the end of the calendar year 2016 was appropriate considering certain contractual obligations that extended through that period. The same is true of the searches contemplated by the Protocol. Therefore, I will recommend that the Protocol searches of the approved search terms commence on the images of the devices that have already been imaged. If a device identified by the Defendants has not been imaged for the search, I recommend that the imaging shall contain only those documents or files created on or before December 31, 2016. In the event a previously imaged device is found to contain a relevant document/file containing an approved search term, Plaintiff may ask to have the device reimaged following the same timeframe.

2.    Brand's Devices to be Searched

Pursuant to the Protocol, Brand is also required to produce electronic devices to be

searched, which include any electronic device

> (c) in Plaintiffs' possession, custody or control that Plaintiffs
> contend was used by any of the Irex Individual Defendants to
> misappropriate any of Plaintiffs' confidential information,
> documents or trade secrets, (d) in Plaintiffs' possession,
> custody or control that Plaintiffs contend was used by Heather
> Mazgay, Joseph D'Ulisse, Cathy Walls, David Crow, Leslie
> Johnson and/or James Stanich to misappropriate any of
> Plaintiffs' confidential information, documents or trade
> secrets, (e) that Plaintiffs have or will provide to any expert
> witness for examination in this litigation, including but not
> limited to LCG.

Doc. 89 ¶ 3; see also Doc. 89 at 1 n.1.  Brand provided the following "initial list of

devices":  Jeff Maupin's laptop; Denver Keene's laptop;  Joseph D'Ulisse's desktop;

Cathy Walls' desktop; David Crow's two desktop computers and Seagate Internal HDD;

Leslie Johnson's laptop and desktop; and James Stanich's laptop, passport external HDD,

and four thumb drives.  Doc. 159 at 7.  If Defendants request Mr. Russo's laptop and four

thumb drives, Plaintiffs will also image these devices and make them available to

Defendants.  Id. at 2 n.2.

The parties dispute whether Plaintiffs must provide the devices that LCG

examined pre-litigation.  This argument reveals an ambiguity in the Protocol they drafted,

calling for devices Plaintiff gave to an expert "in this litigation."  I will construe "in this

litigation" narrowly and not require production of devices examined only pre-litigation

by an expert.  Nevertheless, Plaintiffs may not use the fact that LCG examined a device

prior to the litigation to shield it from examination if it falls into the other categories of

production, i.e., Plaintiffs contend that the device was used to misappropriate information. Likewise, if a device was examined by LCG before the case was filed, but Plaintiffs plan on using any information found in such examination, they shall produce the device for examination.

Brand also advised Irex that it is not in possession of devices used by individual defendants Mssrs. Rowe, Kwiatkoski, Altmeyer, and Shriver, and alleged co-conspirator Heather Mazgay, because they were "cleansed" and "repurposed." Doc. 179 at 2. Irex has indicated that it may raise a spoliation issue at a later date, and I will not address the issue at this time

I recommend that the search contemplated by the Protocol begin immediately following Judge Stengel's consideration of this Report on all of the electronic devices identified by the parties.

Therefore, I make the following:

## R E C O M M E N D A T I O N

AND NOW, this    21st    day of June 2017, IT IS RESPECTFULLY RECOMMENDED that Irex's objections to the search terms proposed by Brand be substantially overruled as discussed in the accompanying Report. However, I recommend that the objections to the following terms be sustained to the degree indicated:

"Sundt" may be run on the Irex-issued devices of Maupin and Keene only.

The search for "walls" will be limited to "cathy/3 walls."

"Chevis" or "kchevis" may be run only on the devices of the Individual Defendants who attempted to solicit Mr. Chevis.

IT IS FURTHER RECOMMENDED that Brand's objections to the search terms proposed by Irex be substantially overruled as discussed in the accompanying Report. However, I recommend that the objections to the following terms be sustained to the degree indicated:

Each of the following terms may be run only on the devices of the Individual Defendant who was assigned to that project/client/account: "Mount Storm," "*mountstorm*," "Mt Storm," "Mt. Storm," "Ergon," "West Vaco," "Westvaco," (Luke w/5 Paper), (*AECOM* w/5 Arizona), "Arizona Public," "APS," "AZ public," "*azpublic*," "Four Corners," "*fourcorners*," "U.S. Power," "US Power," "U.S. Energy," "Astoria," "Warrior Run," "Cover," "Virginia City," "hybrid Energy Center," (Almegaw/5 (storage or fire or tank)), "Almega County," (Harrison w/20 (first or energy or firstenergy or power of Haywood or "West Virginia"), "Beeler," "Mark West," "Hopedale," "Dominion, " and "Versitech."

Searches for the following terms shall be limited to the first 50 relevant documents containing hits for each term on each device: "Scaffold Tracker," "TIV," and "playbook."

Additionally, IT IS RECOMMENDED THAT discovery related to non-privileged communications by Brand's third-party investigator with third parties shall be governed by the Order entered on June 16, 2017 (Doc. 178 ¶ 1(e)) and no searches be permitted for such information. If additional devices are identified pursuant to Paragraph 5(a) of the

Order entered on June 16 (Doc. 178), I recommend that such devices be subject to the approved searches with the limitations outlined in the accompanying Report.

IT IS ALSO RECOMMENDED that the searches of the previously imaged devices begin immediately after Judge Stengel's consideration of this Report. Although some devices had been imaged prior to December 31, 2016, I recommend that searches of those images commence. If relevant documents are found on a given device, Brand may request that the device be re-imaged and the search terms that had previously produced hits may be run on an updated image.

To the extent Brand seeks to preclude devices examined by its experts pre-litigation, I RECOMMEND THAT the court sustain the objection. However, pre-litigation examination by an expert does not shield the device from examination if it falls into another category of production.


/s/ Elizabeth T. Hey

_____

ELIZABETH T. HEY, U.S.M.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRAND ENERGY & INFRASTRUCTURE :  CIVIL ACTION
SERVICES, INC., et al. :
 :
 v. :
 :
IREX CORPORATION, et al. :  NO.  16-2499

## O R D E R

  AND NOW, this   day of      , 2017, upon careful and
independent consideration of the parties' briefing regarding the search terms to be
utilized in conjunction with the Electronic Discovery Protocol Order (Doc. 89), see Docs.
153, 156, 157, 158, and 179), and after review of the Report and Recommendation of
United States Magistrate Judge Elizabeth T. Hey, IT IS ORDERED that:

  1.  The Report and Recommendation is APPROVED AND ADOPTED;

  2.  The objections to the proposed search terms by both sides are substantially

    overruled, except as discussed in Judge Hey's Report and outlined in the

    Recommendation.


      BY THE COURT:


      _____
      LAWRENCE F. STENGEL J.