IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRAND ENERGY & INFRASTRUCTURE : CIVIL ACTION
SERVICES, INC., et al. :
:
v. :
:
IREX CORPORATION, et al. : NO. 16-2499

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                December 21, 2017

Presently, the court considers dueling motions regarding the Rule 30(b)(6)

deposition of Jason Dodd, the Controller for the defendant Irex entities ("Irex") and their

designated deponent. Based on the deposition testimony, Brand "renews its request for

an Order compelling [Irex] to produce financial documents sufficient to identify what

profit [Irex] earn[ed] on any job for a Brand customer or how the money flowed between

Irex entitites." Doc. 256 at 1. Irex responds that the documentation provided is the

information kept in the ordinary course of business that establishes the revenue and profit

earned by Irex from Brand customers. Doc. 258 at 2-4. In its motion, Irex complains

that Brand violated the discovery orders in this case and asks the court to mark the Rule

30(b)(6) deposition of Mr. Dodd completed. Doc. 255. Brand responds that Irex's

accusations regarding the deposition are baseless. Doc. 259. For the reasons that follow,

both motions will be denied.

### I.      Brand's Motion

In order to understand Brand's many complaints about the deposition, I need to

review some history of the discovery disputes that have plagued this case. On October

20, 2017, I held oral argument on two motions to compel (Docs. 220 and 222) filed by Brand. As discussed at the hearing, in Brand's fourth request for production of documents numbered 1, 14, and 15, Brand was looking for the profit made by Irex from any former Brand customer in order to prove its damages. <u>N.T.</u> 10/30/17 at 7. As explained by Brand, this could be complicated by the movement of money between Irex entities if one Irex entity contracted with another to perform part of the work. <u>Id.</u> According to Brand, depending on the internal-Irex contracts, "[they] can actually make [their] profit look like zero" by billing services related to the job to different Irex entities. <u>Id.</u> at 20.

At the hearing Irex's counsel represented to the court that through use of the Earned Revenue and Margin Reports (Bates Nos. IREX 0273536-39) and the Recognized Revenue Margin Reports (Bates Nos. IREX0273552-55) anyone could track the flow of money through the Irex entities. <u>N.T.</u> 10/30/17 at 26-27. As explained by defense counsel, the Recognized Revenue charts showed customer-level detail and the Earned Revenue charts showed the job-level detail. <u>Id.</u> at 26. Defense counsel then walked through two examples using the Earned Revenue and Margin Report from 2016 (Bates No. IREX0273539) to show the contracts for the Dominion Clover Outage and Dominion Opossum Point Station, showing the job level contract numbers and costs, and then to the Recognized Revenue Margin for 2016 (Bates No. IREX0273555) to show the customer level revenue and margin. <u>Id.</u> at 27.

After questioning Mr. Dodd regarding these reports for the relevant years, Brand argues that "Defendants' representations to the Court were not true or accurate in any

way." Doc. 256 at 2. Specifically, Brand argues that Mr. Dodd testified that, "unless one has a working knowledge of the operations of the Irex organization, one cannot interpret all of the information contained in the financial reports." Id at 3. However, the excerpt of Mr. Dodd's deposition cited for this proposition shows Mr. Dodd was asked to look at one of the Recognized Revenue Reports, which contain customer-level detail, not job-level detail. Dodd Dep. at 217:18-23. Defense counsel explained at the oral argument that the Recognized Revenue Reports and the Earned Revenue Reports needed to be reviewed to obtain both customer and project based data.

Brand complains that it cannot identify the customer from the Earned Revenue and Margin Reports. Brand also argues that the financial documents "do *not* identify all of Defendants' customers who may have worked on jobs for Brand customers . . . and do *not* tell which job corresponds to a particular customer, how much Defendants earned on any particular job, or what Irex entities billed for services for such jobs." Doc. 256 at 3.[1] In support of this proposition, Brand cites to deposition testimony in which Mr. Dodd was specifically asked to identify the customer for whom a specific project was done on the Earned Revenue and Margin Report for 2013. Doc. 256 at 3 (citing Dodd Dep. at 199:14-25). Mr. Dodd responded that the document did not identify the customer and the only way to cross-reference to a customer would be to access the ERP, Irex's accounting

---

[1] One of the citations that Brand uses for this appears to be an anomaly. During his deposition, Mr. Dodd was asked about a customer identified as Alt Ph Number. Dodd Dep. at 188: 5. Mr. Dodd explained that this was in all likelihood an error in the setup of the customer record. Id. at 188:14-18.

software.  Dodd Dep. at 199:25-200:10; 200:23-201:5; 202:7-18; 252:21-25.[2]  The upshot

of Brand's argument is that Irex has produced documentation showing the earned revenue

by customer and by project, both of which are over inclusive, i.e., the project information

provided does not identify the customer and the customer information does not identify

the project.  Brand wants a single report that identifies revenue/profit for its former

customers project by project.

Irex complains that Brand's motion in this respect is nothing more than an

untimely motion for reconsideration of this court's October 24, 2017 Order (Doc. 236).

Doc. 258 at 2.  I disagree to some extent with the characterization.  Had the Rule 30(b)(6)

deposition of the Controller of Irex revealed that defense counsel had actually

misrepresented the financial documentation provided, the court would have no problem

revisiting the issue in light of new evidence.  However, the original requests for

production that resulted in the production of the financial documentation at issue sought

financial statements, income tax filings, operating budgets, revenues generated, profits

generated, Earned Revenue & Martin Reports, Recognized Revenue by

Region/Area/Mrkt Reports, transactions between or among the relevant Irex entities, and

transfers of assets between or among the relevant Irex entities.  Plaintiff's Fourth Request

for Production of Documents, Nos. 6-8, 10-15.  Mr. Dodd's Rule 30(b)(6) deposition

does not undermine the validity of the documents produced.  He testified that he would

have to consult the accounting program to cross reference the jobs to the customers, so it

---

[2]Cross referencing the Earned Revenue and Margin Report for 2013 with the
Recognized Revenue Margin Report from the same year, shows that there were only
three customers corresponding to Vertical Access Northeast Area (code 282).

does not appear that a document with such cross referencing is kept in the ordinary course of business. The fact that Brand is not happy with the form of the production does not undermine its validity.[3]

Irex has produced the documentation to show what amounts it has made from former Brand customers based on documents it keeps in the ordinary course of business. I will not require it to manipulate its software to create reports it does not use in the ordinary course of business. <u>See</u> Fed. R. Civ. P. 34(b)(2)(E)(i) (requiring production of documents as they are kept in the usual course of business). Brand's motion will be denied.

## II.    <u>Irex's Motion</u>

In its motion, Irex argues that Brand went far afield in questioning Mr. Dodd during his Rule 30(b)(6) deposition, and asks the court to mark the Rule 30(b)(6) deposition of Mr. Dodd completed. Doc. 255. Again, some history of the discovery

---

[3]Brand argues that Mr. Dodd stated that he needed additional business records to do the requested cross-referencing. Doc. 256 at 3. In fact, Mr. Dodd said that he would have to have "additional information." Dodd Dep. at 253:15-20. Earlier in his deposition, Mr. Dodd stated that he could get such information by inquiring in the ERP, the accounting software. <u>Id.</u> at 200:4-10. Although Mr. Dodd was aware of instances when such information was "specially compiled," Dodd. Dep. at 230:4-17, when asked directly about a combined job/customer report, stated that he had never seen such a report and responded as follows as to whether one could be generated:

> I would submit that to our IT group to create a customization to see if that was feasible to do. So the answer is, you know, these are the standard reports we have built and these are the standard business tools that we use. Could we do a customization report? Yes, but I would need our IT group or someone that's specific in the system to do a report writer to aid in that.

Dodd Dep. 229:10-17.

disputes in the case are necessary before delving into the arguments.  According to earlier filings, on May 19, 2017, Brand served each of the six Irex Corporate Defendants with Rule 30(b)(6) deposition notices containing 56 separate topics.  Docs. 197-1 at 2; 197-3.  On August 9, 2017, Irex filed a motion for a protective order, asking the court to quash a number of topics listed in the deposition notices.  After considering the motion, response, and the deposition notices, I granted Irex's motion, in part, limiting inquiry into certain areas temporally, and other based on relevancy.  I precluded inquiry into other topics that I found were completely irrelevant.  Doc. 207.  Irex now argues that during Mr. Dodd's Rule 30(b)(6) deposition, Brand inquired into areas previously determined to be off limits and thereby wasted Mr. Dodd's time.

Before proceeding to address Irex's specific arguments, I note that Irex appears to begin with a false premise.  According to Irex, Mr. Dodd was available for over 7½ hours for the deposition at Brand's counsel's office and was on the record for 5 hours and 55 minutes.  Doc. 255 at 5 n.2.  Irex offered to compromise regarding Brand's request to continue the deposition by offering to make Mr. Dodd available for another 1 hour and 5 minutes, presumably on the assumption that his deposition was limited to 7 hours.  On the contrary, as explained in my Order of August 30, 2017, "[i]f Irex identifies the same individual for multiple corporate defendants, he . . .  shall be deposed for a maximum of . . . 7 hours . . . for each defendant for which he . . . has been designated."  Doc. 207 at 6

n.2.  Thus, Brand is entitled to depose Mr. Dodd for 7 hours for each of the entities for

which he was designated, rather than 7 hours total.[4]

        a.      Deposition Topics 1-3, 9-10, and 12 – Corporate Structure/Inner
                Workings

With respect to Topics 1-3, 9-10, and 12, which I previously noted "focus on the

relationship between, ownership of, corporate structure of, transactions between/among,

transfers of assets between/among, and shared services between/among nine Irex

entities," I believe the confusion regarding permissible inquiry in these areas arises from

the sequence of events prior to Mr. Dodd's deposition.  When ruling on Irex's motion for

a protective order, I limited inquiry to an explanation of the corporate structure of the Irex

entities.  Doc. 207 at 3.  Thus, I found inquiry into the "inner-workings of, transactions

between, and transfers between the Irex entities" to be overbroad and irrelevant.  Id. at 3-

4.

Subsequently, I held argument on Brand's motion to compel responses to its

fourth request for production of documents.  See Doc. 241.  Part of that argument focused

on certain financial documents evidencing the contracts, revenue, and profit generated by

Irex's contracts with former Brand customers.  As explained by Brand, they wanted to

see the billing transactions within the Irex entities with respect to the Brand customers to

insure that they are capturing the internal transactions so the profit is not reduced by work

---

[4]Having reviewed Mr. Dodd's deposition, it is clear that the entire time allowed
will not be necessary in light of the corporate structure and interrelationship of the
defendant entities and their officers.  At the end of the deposition, Brand's counsel
estimated she would need another two to three hours.  Dodd. Dep. at 269:14-16.  I will
allow an additional four hours.

performed by a different Irex entity.  <u>N.T.</u> 10/20/17 at 20.  I agreed that Brand should be permitted to "follow a money trail."  <u>Id.</u> at 19.[5]

During the argument on the motions to compel, Irex's counsel explained that Irex had produced contract-specific financial statements to respond to such concerns.  <u>N.T.</u> 10/20/17 at 24.  Although Irex expected that Brand could "figure[] it out," <u>id.</u> at 42, defense counsel noted that "they're planning to put -- depose Jason Dodd, who's the controller -- he's our 30(b)(6) witness -- to ask about all the financial information.  So they certainly can ask him about that then."  <u>Id.</u>  Reviewing the entirety of Mr. Dodd's Rule 30(b)(6) deposition transcript reveals that much of it dealt with inquiry into the corporate structure of Irex, its relationship to its holding company, North Lime, and the various components of Irex that could bill a contracting Irex entity for services.  <u>See</u> <u>e.g.</u>, Dodd Dep. 14:7-22, 16:1-6 (discussing payroll processing done and billed by Advantage Management); 55:10-57:18 (valuation of Irex and relationship to North Lime); 58:3-59:12 (payroll also processed by Actum, another subsidiary of North Lime); 64:15-75:15 (explaining overhead expenses charged by Irex to its subsidiaries for the services it provides).[6]

_____

[5]This friction is exemplified by a dispute between counsel during the deposition. <u>See</u> Dodd Dep. at 14:23-15:15.

[6]Some of the questioning, however, did go off on irrelevant tangents.  <u>See</u> <u>e.g.</u>, Dodd Dep. at 54:13-55:9 (regarding the formation of Irex), 60:6-15 (the underlying reasons for the creation of Irex Corporation), <u>id.</u> at 60:16-61:9 (a lawsuit involving asbestos litigation), 91:17-92:8 (inquiry into the retirement of a board member), 92:9-94:1 (selection of the vice president of construction services).

To clarify the court's ruling in light of the representations made at the oral argument in October that Brand would be able to question Mr. Dodd about the financial information provided by Irex, Brand may question Mr. Dodd about the corporate structure of Irex in order to follow the "money trail." In order to understand the financial documentation and the internal billing, it is necessary for Brand to understand the structure of Irex to understand what Irex-related entities could or were internally billing the Irex entity that contracted with a former Brand customer.

b.     Deposition Topics 19-22 – Trade Secrets

By order of August 30, 2017, I precluded inquiry into Irex's trade secrets, the steps taken to protect such trade secrets, and the economic value of such trade secrets. Doc. 207 at 2. During the questioning of Mr. Dodd, Brand's counsel asked if he was familiar with recent litigation involving Advanced Industrial Services that Brand's counsel identified as "a trade secrets noncompete lawsuit." Dodd. Dep. at 155:1-3. Although Brand argues that it was merely testing Irex's claims that its subsidiaries are "independent and distinct from one another," Doc. 259 at 4, I find this line of questioning impermissible.

c.     Deposition Topic 13 – Internal Accounting and Bookkeeping

In my August 30 Order, I precluded inquiry into Irex's "internal accounting and bookkeeping functions and procedures as irrelevant." Doc. 207 at 2. Of necessity, Mr. Dodd's deposition included reference to the software program Irex uses, as it was used to produce the financial and accounting documents in discovery. For example, as Brand introduced a financial document, counsel asked how the document was generated, with

the response that it was the accounting program. Dodd Dep. at 25:6-7; 27:9-11; 164:2-5. When Brand asked about the cross-referencing information by customer and project as discussed in the first section of this Memorandum, Mr. Dodd explained that he would have to "[i]nquire in our ERP," which he explained was the accounting software. Dodd Dep. at 200:4-201:5; 224:14-225:14. This questioning did not violate my order, and Irex's suggestion that it did, Doc. 255 at 4, is unreasonable. Once Brand's counsel determined that the reports were generated by the accounting software, she moved on to another topic. When the issue of cross-referencing the relevant reports was discussed, there was a bit more discussion about the program and its archives, but nothing more than cursory questioning.

### d.    Irrelevant Topics not Identified in the Rule 30(b)(6) Notice

Irex identifies a number of topics into which Brand inquired that were not listed in the deposition notice. Doc. 255 at 4. Brand responds that it is permitted to inquire beyond the noticed 30(b)(6) topics. Doc. 259 at 5. Brand relies on Cabot Corporation v. Yamulla Enterprises, Inc., 194 F.R.D. 499 (M.D. Pa. 2000), in which the Honorable A. Richard Caputo held that the Rule 30(b)(6) notice does not limit the scope of the deposition.

> Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery "unless otherwise ordered by the court." I do not read Rule 30(b)(6) as carving out a special limitation on the scope of discovery defined in Rule 26(b)(1). Moreover, it is my view that Rule 26(b) does not permit such a special limitation. Indeed the language of Rule 26(b) provides that the only way to change the scope of discovery set forth in Rule 26(b)(1) is by order of the court "in accordance with these rules."

194 F.R.D. at 500.[7] Judge Caputo's decision was based on <u>King v. Pratt & Whitney</u>, in which the court reasoned that allowing questioning beyond the Rule 30(b)(6) notice made sense because the deposing party "could simply re-notice a deponent under the regular notice provisions and ask him the same questions that were objected to." 161 F.R.D. 475, 476 (S.D. Fla. 1995); <u>see</u> <u>also</u> <u>Bracco Diagnostics Inc. v. Amersham Health, Inc.</u>, Civ. No. 03-6025, 2005 WL 6714281, at *2 (D.N.J. Nov. 7, 2005). Based on this reasoning, I find that Brand committed no error in questioning Mr. Dodd beyond the topics listed in the Rule 30(b)(6) Notice. However, any inquiry during the Rule 30(b)(6) deposition is subject to the relevancy and proportionality rules of Rule 26(b)(1) and this court's prior discovery orders.[8]

e.     <u>Deposition Tactics Resulting in Reduced Time</u>

Finally, Irex complains that Brand wasted Mr. Dodd's time by repeating questions, going off the record to locate exhibits, and have internal discussions, and asks that the Court mark the deposition complete. Doc. 255 at 5. Irex's request is denied. The deposition transcript reveals no unusual delay, and to the extent more time was spent than necessary, both counsel share responsibility.

---

[7]Although the Federal Rules of Civil Procedure have been amended since Judge Caputo's decision, I note that the language upon which he relies in Rule 26(b)(1) remains.

[8]Specifically, inquiry into any financial remuneration paid by or to Mr. Russo in connection with Irex's settlement of the claims against him is impermissible.

Considering the discovery deadline quickly approaching, and the deadline extensions previously granted by this court, I recommend that counsel for both sides narrow their focus in completing the depositions.

An appropriate Order follows.