IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRAND ENERGY & INFRASTRUCTURE SERVICES, INC., et al. | : : : | CIVIL ACTION |
| v. | : : | |
| IREX CORPORATION, et al. | : | NO. 16-2499 |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                                March 2, 2017

      Brand once again asks the court for an order compelling Irex "to produce financial reports prepared in the ordinary of course of business that show the profit Irex earns on each job for a Brand customer or how money flowed between the Irex entities." Doc. 298 at 1. Irex responds that it "cannot run the reports requested by Brand" and that the court has previously ruled on this exact issue on two prior occasions (once after hearing oral argument). Doc. 302 at 2, 3.

      Brand also filed a motion for leave to file exhibits. Doc. 300.[1] Irex opposes this motion arguing that the exhibits are duplicative and do not support any claim for relief. Doc. 303 ¶¶ 6 & 7. I have previously reviewed some of the documents presented by Brand in considering this issue in the prior motions, and will grant Brand's motion with respect to the excerpts of the continuation of Mr. Dodd's deposition on February 6, 2018,

---

[1] By prior Order, I limited discovery-related motions to five pages with no attachments. Doc. 209. With prior motions, if I felt that documents were necessary for disposition, i.e., deposition transcript, answers to interrogatories or requests for production, I requested the documentation from counsel.

and the excerpts of Mr. Banks' deposition.[2]  This testimony had not yet been taken when I last addressed the issue on December 21, 2017.  See Docs. 262 & 263.

A basic description of the documentation that Irex has produced in discovery is necessary to understand the crux of Brand's request.  Prior to the oral argument I held in October on one of Brand's motions to compel similar documents, Irex produced several reports that are generated in the ordinary course of business, including the Earned Revenue and Margin Report, which contains job-level detail (including contract amount, and revenue and margin for the job-to-date and year-to-date), and the Recognized Revenue Report, which is a customer-based report (identifying the customer, revenue and margin).  Dodd Dep. at 195:20-196:14; 212:4-213:2; 223:2-14; see N.T. 10/30/17 at 26-27.  In order to determine its damages, Brand seeks this information compiled together with the expenses incurred per job to determine if potential profits were funneled to other of the Irex entities.  However, when asked if it was possible to see these two reports "married together" to contain both customer-level and job-level information, Mr. Dodd explained that he would have to submit such a request to the IT department to create a customization "to see if that was feasible to do."  Dodd Dep. at 228:23-229:17.  Based on this testimony and other similar testimony during Mr. Dodd's November 10, 2017 deposition, I concluded that such a report was not readily available nor created in the ordinary course of business and therefore denied Brand's motion.  Doc. 262 at 4-5.

---

[2] Jason Dodd is the controller of Irex.  Dodd Dep. at 8:2-4.  John Banks was the vice president of construction services at Irex before retiring at the end of 2016.  Banks Dep. at 29:10-30-2.

Since that time, Brand has taken additional depositions which undermine the basis for my conclusion with respect to some of the information Brand seeks.[3] Mr. Dodd's deposition continued, as ordered by the court, on February 6, 2018. Some of his testimony seemed to refer to the reports previously produced. See, e.g., Dodd Dep. at 285:22-287:3 (referring to monthly reports run for jobs showing revenue and margin, which appear to be the Earned Revenue and Margin Report). However, other portions of his testimony referred to reports containing previously requested information that has not been produced. See, e.g., id. at 289:5-290:17 (referring to reports on a job-basis showing the type of expense and the vendor charging the expense against each job). This is the type of information Brand sought in an effort to determine if Irex funneled profit through other Irex subsidiaries. N.T. 10/20/17 at 5-8 (describing request to follow the money trail between Irex entities). Such information was not contained on the documentation discussed at the oral argument. According to Mr. Dodd, using the accounting system, he can "look into jobs and see specific activity within the job" and such reports were run on an "as-needed" basis. Id. at 285:1-11. In addition, he testified that Irex collects information in the accounting system regarding the specific expenses charged against each job. Id. at 288:14-290:4. He said that such reports can be created and were done once a month, but he did not know if such reports were printed. Id. at 290:5-17.

---

[3]Neither Mr. Dodd's deposition nor that of Mr. Banks expressly contradicted Irex's prior representation that no report combines the job level and customer level information Brand seeks. Although Mr. Banks explained that when one looks up a job in the accounting system it would also indicate the customer's name, Banks Dep. at 240:18-24, he also testified that "[t]here is not one form that tells you all your information," both job and customer. Id. at 241:1-8.

3

Mr. Dodd's testimony regarding the collection of information regarding the job costs is supported by Mr. Banks' testimony. According to Mr. Banks, the "job cost software captures all the costs for every job . . . , whether it's a hundred dollar job or a $10 million job." Banks' Dep at 210:6-10. It was kept in a "line item" fashion including expenses for equipment, labor, insurance, and would include subcontracting agreements, including those with other Irex entities. Id. at 213:21-215:6. He explained that the job costs were kept in the ordinary course of business, and were accessible electronically; however, the reports were not produced, which I interpret to mean that they were not routinely printed out. Id. at 210:11-16. Anyone who was authorized (project manager, branch manager, subsidiary manager and presidents of the companies) could access such job level reports (including expenses) and could print them out. Id. at 211:17-212:12. Such information was also available per customer. Id. 212:14-21.

Irex responds that it has produced the reports that it maintains in the ordinary course of business. Beyond that, Irex argues that although additional data or information may be kept in Irex's accounting system, and is electronically accessible, such information is not reported on any regularly run financial reports, Irex cannot be compelled to create the type of reports Brand seeks, and Brand has failed to show that such reports have any relevance to the litigation. Doc. 302 at 3, 4.

Addressing the last of Irex's responses first, the profit made by Irex on contracts with former Brand customers is the key to Brand's damages in this case. Rule 26(b) defines the scope of discovery to include matters "that [are] relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). The

documentation already produced by Irex shows the revenue and profit generated on the job level. However, that report does not identify any charges incurred by other Irex entities working on the same job, and that gap could allow Irex to artificially minimize Brand's damages by offsetting charges by another Irex entity without accounting for the profit made by the other Irex entity. Mr. Banks testified that line item job costs are kept in the accounting program and readily accessible, and include payments made internally to other Irex entities and externally. Banks Dep. at 214:20-215:6. Thus, the relevant information exists in the accounting program.

To the extent Irex argues that it cannot run and cannot be compelled to run the reports in the format requested by Brand, I reject Irex's argument. Rule 34 of the Federal Rules of Civil Procedure allows discovery of electronically stored information. Fed. R. Civ. P. 34(a)(1)(A). Mr. Dodd testified that he could go into the accounting system, pull up a specific job, and see the precise expenses of the job and who the vendor for each expense was. Dodd Dep. at 288:25-290:4. Mr. Dodd confirmed that such reports were created at least once a month, but he did not know if such reports were printed. Id. at 290:5-17. Mr. Banks testified that such reports "exist in the software, and anybody can go in and look who is authorized to look at them," "[a]nd print them out." Id. at 212:4-12. Thus, I reject Irex's contention that such reports are not and cannot be run.[4]

---

[4]The testimony regarding the line item expenses against jobs was significantly different than that regarding the merging of customer and job reports. As noted, Mssrs. Dodd and Banks testified that reports on the line item expenses for jobs were readily accessible in the accounting software, were accessed routinely and run, and could be printed. With respect to compilation of job and customer in a single document, Mr. Banks testified that when one uses the software to access a particular job, it does indicate

5

To the extent Irex implies that it has produced this information in other documentation, I also reject the argument. Specifically, Irex refers to the "Related Parties" section of the financial statements of the Irex entities. Doc. 302 at 4 n.4. However, the information contained in this section of the financial statements is more general and does not identify the job for which services were rendered. See IREX 0273551 at 12-13 (Vertical Access, Financial Statements, Dec. 31, 2016 & 2015). Thus, Brand cannot use that information to determine if Irex subcontracted with another Irex entity on a job for a former Brand customer.

Therefore, I will grant Brand's motion to compel in part. Irex shall produce the line item reports referred to by Mr. Banks in his deposition (Banks Dep. at 213:21-215:6) and Mr. Dodd (Dodd Dep. at 288:1-290:12) for each of the former Brand customers and projects referred to in the Amended Complaint and used in the search terms for the Forensic Protocol.

An appropriate Order follows.

---

the customer's name, explaining that "[y]ou have to navigate the system." Banks Dep. at 238:18-239:1; 240:18-24; 241:1-8. Thus, although such information is contained in the accounting system, it does not appear that it is readily accessible.